BURKE v. GULF, C. & S. F. RY. CO.

(Municipal Court of City of New York, Borough of Manhattan, First District.
May 14, 1914.)

1. PLEADING (§ 194*)—ANSWER—MATTER AVAILABLE UNDER DENIAL.

That the facts alleged in a defense might have been proved under the denials of the answer did not render the defense demurrable.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 444, 445, 446, 449–452; Dec. Dig. § 194.*]

2. CARRIERS (§ 184*)—ACTION AGAINST CONNECTING CARRIER—DEFENSES—IN-CORPORATING DENIAL.

In an action against an initial carrier for the loss of a shipment while in the custody of a connecting carrier, a denial was not necessary, and had no place in a defense alleging that the shipment was received under a contract to transport and deliver it to a connecting carrier, and that it was so transported and delivered in like condition as when received.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 832–834; Dec. Dig. § 184.*]

3. CARRIERS (§ 184*)—ACTIONS FOR LOSS—PLEADING—ANSWER.

In an action against an initial carrier for the loss of a shipment while in the custody of a connecting carrier, a defense alleging that the shipment was delivered to defendant to be transported by it to a certain point and there delivered to a connecting carrier for transportation by it, that defendant accepted the shipment under the terms and conditions of its bill of lading, and that it transported the shipment and delivered it in the same order and condition as when received to the connecting carrier, in accordance with the terms of its bill of lading, stated a complete answer to plaintiff's claim, irrespective of the Carmack Amendment to the Hepburn Act (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. Supp. 1911, p. 1307]), making initial carriers liable for any loss or damage caused by it or any connecting carrier, since it in effect alleged that defendant fully performed its contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 832–834; Dec. Dig. § 184.*]

4. CARRIERS (§ 177*) — TRANSPORTATION OF GOODS — LOSS OR DAMAGE — LIA-BILITY.

The Carmack Amendment to the Hepburn Act (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. Supp. 1911, p. 1307]), providing that any carrier receiving property for transportation "from a point in the state to a point in another state" shall be liable for loss or damage caused by it or any connecting carrier, and that no contract, receipt, etc., shall exempt it from such liability, does not apply to transportation from a point in one state through another state to an adjoining foreign country.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 775–789, 791–803; Dec. Dig. § 177.*]

5. CARRIERS (§ 177*)—LOSS OR DAMAGE TO GOODS—LIABILITY.

The Carmack Amendment to the Hepburn Act (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. Supp. 1911, p. 1307]), making initial carriers liable for loss or damage "caused" by them or any connecting carrier, does not make such a carrier liable for loss caused by fire on the vessel of a connecting carrier, without the design or neglect of the connecting carrier for which the connecting carrier is relieved from liability by Rev. St. §§ 4282, 4289 (U. S. Comp. St. 1901, pp. 2943, 2945); such loss not being "caused" by either carrier, and it not being the purpose of the act to impose an absolute duty upon the initial carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 775–789, 791–803; Dec. Dig. § 177.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. SHIPPING (§ 134*)—LOSS OR DAMAGE TO GOODS—LIABILITY.
        Rev. St. §§ 4282, 4289 (U. S. Comp. St. 1901, pp. 2943, 2945), relieving
    the owners of vessels from liability for loss or damage due to fire, unless
    caused by the design or neglect of such owners, are available as a defense
    to the owner of the vessel, though the carriage is under a through bill of
    lading.
        [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 490, 491; Dec.
    Dig. § 134.*]

Two actions by James E. Burke against the Gulf, Colorado & Santa
Fé Railway Company, for damages to shipments of 31 and 11 bales of
cotton, respectively, delivered to defendant as initial carrier. Plaintiff
demurs to second separate defenses interposed by defendant's answers.
Demurrers overruled.

Tipple & Plitt, of New York City (Arthur W. Clement, of New
York City, of counsel), for plaintiff.

Walker D. Hines, of New York City (Henry E. Chapin, of New
York City, of counsel) for defendant.


STURGES, J.  The complaint in this action alleges: That the de-
fendant was engaged in the transportation of property partly by rail-
road and partly by water in conjunction with other common carriers
under an arrangement for a continuous carriage or shipment from
one state of the United States, the state of Texas, through another
state of the United States, the state of New York, to an adjacent for-
eign country, the Dominion of Canada.  That on or about April 15,
1912, at Cleburne, in the state of Texas, there was delivered to the
defendant, as a common carrier, and as the initial carrier, certain
property consisting of 31 bales of cotton consigned to shipper's order
at Kingston, Ontario, Canada, notify the Dominion Textile Company,
Limited, Kingston Branch, at Kingston, Ontario.  That at said time
the defendant accepted and received the property, and for a valuable
consideration promised and agreed to carry and deliver the same to
the consignee in the same order and condition in which it was receiv-
ed, and duly issued its bill of lading therefor.  That such cotton, at the
time of the delivery to the defendant, was in good order and condition
and the property of Lake Bros. of New York City.  That the defend-
ant, or common carrier, railroad or transportation company en route,
to whom it delivered said property, or over whose line or lines said
property passed, negligently conducted itself or themselves in the
custody, control, transportation, and care of the property, and so neg-
ligently dealt with, cared for, and transported said property that the
31 bales and its contents were partially destroyed and otherwise dam-
aged to the amount of $398.10, and also alleges an assignment by Lake
Bros. to the plaintiff.  The answer denies the material allegations of
the complaint, and alleges for a second and complete defense: That
on or about April 15, 1912, there was delivered to the defendant at
Cleburne, Tex., a certain shipment consisting of 31 bales, said to con-
tain cotton, being the property referred to in the complaint, consigned
to shipper's order, Kingston, Ontario, notify the Kingston Textile
Company, Limited, Kingston, Ontario, to be transported by defendant
to Galveston, Tex., and there delivered to the Mallory Steamship

Company as the connecting carrier thereof, for transportation and delivery by said last-named carrier to the next connecting carrier on the route to destination, and the defendant accepted such shipment for transportation under the terms and conditions of its bill of lading issued therefor and not otherwise, and that in and by the same it was expressly agreed that the shipment should be subject to marine exceptions if shipped by sea. That defendant transported the said shipment to Galveston, Tex., and there delivered the same, in the same order and condition as when received, to Mallory Steamship Company, its connecting carrier, in accordance with the terms of its bill of lading. That the Revised Statutes of the United States by section 4282 and acts amendatory thereof fix and determine the liability of owners of vessels for fire as follows: (Reciting the provisions of said section.) That section 4289 of the Revised Statutes and acts amendatory thereof make the provisions of said section 4282 applicable to all seagoing vessels, and also to all vessels used on lakes or rivers or any inland navigation including canal boats, barges, and lighters, and that freedom from liability for fire under said statutes and provisions is one of the marine exceptions specified in the bill of lading covering said shipment. That said Mallory Steamship Company shipped said property by sea upon its route to destination to the port of New York, and upon its arrival at said port of New York loaded said shipment upon its vessel or lighter for transportation by sea upon its route to destination, and that whatever loss or damage was sustained by said shipment the same occurred after the delivery thereof by defendant to its connecting carrier, the Mallory Steamship Company, and while the same was in the possession of said steamship company, and was caused by reason of a fire happening without the design or neglect of said steamship company to or on board of said vessel or lighter and not otherwise. Plaintiff demurred to this second defense on the ground that it is insufficient in law upon the face thereof.

[1-3] It is evident that irrespective of the provisions of the amendment to section 20, known as the Carmack Amendment of the Hepburn Act (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. Supp. 1911, p. 1307]), which was an amendment to the act of Congress known as the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), the facts alleged in the second defense constitute a complete defense to plaintiff's cause of action and relieve the defendant from liability for the loss and damage to the property in question. The demurrer admits the truth of the facts alleged, and, while they may be proved under the denials of the answer, that circumstance does not render them demurrable. A denial is not necessary to be made in such second defense, nor has it any place therein. The effect of such a pleading is considered by the Court of Appeals in Staten Island Midland R. R. Co. v. Hinchliffe, 170 N. Y. 473–481, 63 N. E. 545. It is clear that the allegations of the defense that the property in question was received under a contract to transport and deliver to a connecting carrier, and that it was so transported and delivered in like condition as when received (in other words, that the defendant fully performed its contract), would be a complete answer to plaintiff's claim, and these allegations are admitted by the demurrer. This would be so irrespec-

tive of the further allegation that the contract exempted the defendant from liability for loss occasioned by fire on the vessel of the connecting carrier without the design or neglect of such carrier. Section 4282 and 4289 of the Revised Statutes relieve the owner of the vessel from such liability.

[4] It is contended by the plaintiff that the shipment in question is governed by the Carmack Amendment of the Hepburn Act, and that liability is thereby imposed upon the initial carrier for loss or damage occurring at any place on the route of transportation, notwithstanding a number of different carriers were engaged in such transportation. The amendment reads:

"Sec. 20. That any common carrier, railroad, or transportation company, receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it, or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

The property in question was received by the defendant for transportation. Was it received "for transportation from a point in one state to a point in another state," within the meaning of the act? If this question is answered in the affirmative, then the contract which is alleged in the second defense of the answer, the defense demurred to, is apparently void, for the reason that such contract seeks to confine the liability of the defendant to loss upon its own line as part of the through route, which would be in contravention of the statute. It may be conceded that the shipment in question was interstate commerce. It is provided by the first section of the act that its provisions shall apply to any common carrier engaged in the transportation of property wholly by railroad (or partly by railroad and partly by water when both are used in the common control, management, or arrangement for a continuous carriage or shipment) from one state or territory of the United States, or the District of Columbia, to any other state or territory of the United States, or the District of Columbia, or from one place in a territory to another place in the same territory, or from any place in the United States to an adjoining foreign country, or from any place in the United States through a foreign country to any other place in the United States, etc.

The general purpose of the Interstate Commerce Act and the results sought to be accomplished thereby are entirely different and distinct from those of the Carmack Amendment. The former aimed at correcting abuses arising from rebating and discriminating among shippers. The latter sought to relieve shippers from the difficulty, and oftentimes impracticability, of tracing loss through consecutive carriers so as to obtain redress from that one through whose default the loss occurred. The language of the amendment is new and different legislation, and not at all germane to the general purpose of the statute. When the amendment was enacted, Congress had before it the provisions of section 1, to which reference has been made, relative to the general application of the act to carriers engaged in transportation

of property from one state of the United States to another state of the United States and from any place in the United States to an adjoining foreign country. Notwithstanding this, the amendment, imposing liability upon the initial carrier, was limited to a carrier receiving property for transportation "from a point in one state to a point in another state," thus confining the provisions of the amendment to commerce between the states and excluding such commerce as may be international. The provisions of the first section are declared to be applicable to any common carrier engaged in the transportation of property from one state of the United States to another state of the United States, and also to common carriers engaged in said transportation between other points therein designated. The amendment directly and expressly limits such transportation from a point in one state to a point in another state. This limitation was evidently made advisedly. When Congress thus extended the liability of the initial carrier by making it answer for the default of its connections, it sought to compensate for this additional burden by giving the initial carrier a right of recovery against its connection through whose default loss occurs. In the case of a shipment from any place in the United States to an adjoining foreign country, the right to such a recourse would not be available, as the jurisdiction of our courts would not extend to a carrier operating in such adjoining foreign country. It may well be that for this reason the amendment was limited to property received for transportation wholly within the states both as to its receipt and ultimate delivery. It may also well be that Congress did not desire to burden the initial carrier further with the consequences of the acts or omissions of its connections in the adjoining foreign country, deeming it sufficient to confine the liability to acts wholly within the borders of the United States over which it had entire control.

The amendment is a radical departure from the rule theretofore governing the liability of carriers, and its effect should not be extended beyond the clear meaning of the language used and its evident purpose. I am therefore of opinion that the shipment in question, having been received for transportation from a point in a state of the United States, destined to an adjoining foreign country, does not come within the meaning of the Carmack Amendment, even though such transportation required the passage of the property through another state of the United States. The points from and to which property is received for transportation are determined, as it seems to me, by the contract of carriage, and these, as appears from the allegations of the second defense, were Cleburne, Tex., and Kingston, Ontario; and in fact the same appears in the complaint. The question has received consideration in Houston Ry. Co. v. Inman (Tex. Civ. App.) 134 S. W. 275, and Texas R. R. Co. v. Sabine Tram. Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442.

[5, 6] But assuming that the shipment in question was received for transportation from "a point in one state to a point in another state," and that therefore the provisions of the Carmack Amendment are applicable, I am of opinion that the allegations of the answer under consideration constitute a defense to the action. As stated before, the purpose of the amendment was to extend the liability of the initial carrier beyond responsibility for its own acts and make it responsible

for those of its connecting carriers, who thereby became its agents for the through carriage. The language of the amendment does not disclose any intent to enlarge the liability of the initial carrier for loss occurring on its own line, or the liability of the connecting carrier for loss occurring on its line for which the initial carrier must respond. Nor does the act impose an absolute liability upon the initial carrier for loss occurring on either line. The language is not that the initial carrier shall be liable for any loss occurring on its own line or that of its connection, but "for any loss, damage, or injury to such property caused by it or by any common carrier  \*  \*  \*  to which such property may be delivered or over whose line or lines such property may pass." That is to say, the loss must be caused by the default, omission, or commission of the initial carrier or its connection in order that liability therefor may be imposed upon the initial carrier. The words "caused by it or by the" connecting carrier have a distinct meaning, and were used advisedly by Congress to indicate its intention as to what liability should be imposed upon the initial carrier, as distinguished from an absolute liability from all loss occurring on either line. A loss occurring without the design or neglect of the carrier cannot in any sense be said to be caused by such carrier, and for this reason a loss occurring from fire on a vessel of a connecting carrier, without its design or neglect, for which it is relieved from liability by the provisions of sections 4282 and 4289 of the United States Revised Statutes, cannot be said to be a loss for which the initial carrier is liable. Those sections are available as a defense to the water carrier, notwithstanding the carriage may be under a through bill of lading. D'Utassy v. Mallory S. S. Co. (Sup.) 147 N. Y. Supp. 313. Being available to the connecting carrier, which is the agent of the initial carrier, they are also available to the latter. It certainly was not the intention of Congress, nor does the language of the act admit of a construction which would impose upon the initial carrier a liability for a loss on the line of one of its connecting carriers, from which liability such carrier is exempted by statute.

For these reasons I conclude that the demurrer is not well taken and should be overruled, with the privilege to the plaintiff of withdrawing the same on the payment of $5 costs.