[L. A. No. 6918. In Bank.—January 5, 1922.]

## W. E. McCASLIN, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] Common Carriers — Conversion of Shipment — Pleading — Evidence.—Where, in an action for the conversion of goods while they were in the possession and under the control of the defendant as a common carrier between the point of shipment and the point of destination of the goods, the complaint alleged that the defendant was a carrier and that it unlawfully and wrongfully sold the goods without the plaintiff's knowledge and contrary to his instructions, the plaintiff could only recover upon proof either that the defendant sustained the relation of carrier of the goods at the time of their conversion, or had so contracted with plaintiff as to be liable for loss by any other carrier or bailee.

[2] Id.—Transportation of Goods Beyond Lines—Liability—Common Law.—A common carrier by the acceptance of goods for transportation over its railroad lines to their destination and thence over the connecting lines of other carriers to the destination of the goods does not have imposed upon it by common law any liability as a carrier of such goods beyond the terminal of its own lines.

[3] Id.—Nonliability Under Federal Law—Carmack Amendment — Cummings Act.—The Carmack Amendment to the Interstate Commerce Act making initial carriers liable for loss of shipments by connecting carriers did not apply to a shipment whose destination was outside of the United States, and the Cummings Act, which replaced such amendment and had the effect of extending the liability of an initial carrier so as to cover losses upon connecting lines, is not applicable to a foreign shipment made before the enactment.

[4] Id.—Conversion by Connecting Carrier—Bill of Lading—Limitation of Liability of Initial Carrier.—Under a bill of lading issued by an initial carrier upon receipt of a shipment of goods to a point beyond the destination of its own lines, no recovery can be had for a conversion of the goods by a connecting carrier, where the instrument expressly limits liability to carriage over its own lines.

2. Limitation of carrier's undertaking to its own line, notes, 5 Am. St. Rep. 719; 88 Am. St. Rep. 74; 31 L. R. A. (N. S.) 52, 68.

3. Carmack Amendment as affecting state regulations as to stipulations limiting liability of common carriers for loss of or damage to goods, notes, Ann. Cas. 1915B, 80, 92; Ann. Cas. 1917C, 939; 44 L. R. A. (N. S.) 257; 50 L. R. A. (N. S.) 819.

[5] Id.—Action for Conversion — Liability of Initial Carrier —
Theory of Negligence — Pleading.—In an action against an
initial carrier for damages for conversion of goods by a connect-
ing carrier in selling the same for transportation charges after
refusal of acceptance by the consignee, the plaintiff cannot re-
cover on the theory that the defendant was negligent in failing
to notify the connecting carrier that it held, as alleged in the
complaint, an indemnity bond for payment of the freight charges,
since such averment was necessary in order to show that the sale
was wrongful.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Frederick W. Houser, Judge.   Reversed.

The facts are stated in the opinion of the court.

Henry T. Gage and W. I. Gilbert for Appellant.

Nathan Newby and Hugh A. McNary for Respondent.

RICHARDS, J., *pro tem.*—The appeal is from a judgment
in favor of the plaintiff in an action brought by him to re-
cover damages for the loss of a carload of vegetables, de-
livered to the defendant for shipment to Regina Fruit Com-
pany, in the city of Regina, Canada.

The complaint is in form an action for conversion.  The
plaintiff, after alleging the corporate character of the de-
fendant and that it was a common carrier of freight and
passengers, and, after alleging his ownership of the goods in
question, proceeded to allege that on or about December 2,
1913, he delivered said carload of vegetables, the same being
of the then value of $568.70, to the defendant to be by it
shipped, transported, and delivered to said Regina Fruit
Company at said place; that, prior to the time of making
said shipment, the plaintiff, being a dealer and shipper of
fruit and vegetables, had executed and delivered to the de-
fendant his general indemnity bond, whereby, as a consignor
of goods over the lines of said company and other connect-
ing lines in conjunction with the said Southern Pacific Com-
pany, he bound himself to the payment of all freight charges
which should become due to the said Southern Pacific Com-
pany, or any connecting lines over which any shipment made
by him should be made and forwarded.  It was also alleged
in the complaint that it was agreed between the plaintiff

and defendant that the freight on such shipment was to be collected from the said consignee, Regina Fruit Company, and that if the Regina Fruit Company failed or refused to pay such freight, then the same was to be paid by the plaintiff, as provided in the indemnifying bond aforesaid; that said carload of vegetables reached its destination on or about December 15, 1913; that the consignee of said shipment refused to accept the said goods, and the plaintiff was thereupon notified of such refusal, and he immediately began negotiations for the disposal of said goods; that while he was so engaged in negotiating for the disposal of the goods, the defendant unlawfully and wrongfully sold and disposed of the said vegetables without prior, or any, notice to the plaintiff, and without his knowledge and contrary to the will and against the instructions of plaintiff; that plaintiff has demanded said goods, but the defendant has wholly failed and refused to deliver the same or any part thereof to plaintiff, to his damage in the sum of $568.70, for which sum the plaintiff has filed his claim with the defendant, but which claim has by it been wholly rejected, and said sum, together with interest thereon, remains and is wholly due and unpaid.

The defendant's answer to this complaint consisted of specific denials, based in the main upon want of information and belief, of its various averments. Subsequently the defendant amended its answer by setting forth a further and separate defense, alleging "That at all the times mentioned in plaintiff's complaint, and particularly at all of the times during which said shipment of vegetables therein referred to was being transported and until delivery or disposal thereof at destination, the Carmack Amendment to the Interstate Commerce Act was in force and effect, and that this defendant's liability as a common carrier terminated upon the delivery of said shipment by it to its connecting carrier in Canada, and that the alleged conversion of said shipment, and the damage, if any, sustained by plaintiff, occurred at Regina, Canada, and for which this defendant is in no way liable." The plaintiff also amended his complaint, increasing somewhat the demand for damages, but not otherwise changing its form. The cause went to trial upon the issues as thus made, whereupon evidence was admitted showing without serious conflict that the carload of vegetables

had been delivered by the plaintiff to the defendant at the city of Los Angeles, consigned at first to one Liddicott at Rosevale, California, but subsequently diverted, by the plaintiff's order, to the city of Regina, in the province of Saskatchewan, Dominion of Canada, under a bill of lading for their delivery to the Regina Fruit Company at said place, the freight charges to be collected from the said last-named consignee; provided, that if the said Regina Fruit Company failed or refused to pay such freight and transportation charges, the same would be paid by the plaintiff as provided in the indemnifying bond as referred to in plaintiff's complaint; that the railroad lines of the defendant did not extend into Canada and in consequence said shipment of vegetables was transported beyond the lines of the defendant to its destination by other connecting carriers, the last of which reaching Regina was the Canadian Pacific Railway; that the Regina Fruit Company, upon notice to it from said last-named railway of the arrival of said carload of vegetables, refused to accept same, of which refusal the defendant was immediately notified; that the defendant did not notify the plaintiff of such refusal, but the plaintiff was informed by some outside party that his said consignee had refused to accept said vegetables and he immediately proceeded to make arrangements by wire for the disposal of the same through a firm of brokers at Regina; that the defendant did not notify the Canadian Pacific Railroad that the plaintiff was making such arrangements, nor did it notify the latter railway that it was the holder of a good and sufficient indemnity bond for the payment by plaintiff of the freight and transportation charges on said car of vegetables; that the Canadian Pacific Railway Company, having no notice of these facts, caused the said carload of vegetables to be sold for the freight and transportation charges, amounting to the sum of $357.50; that the reasonable value of the vegetables in the city of Los Angeles at the time of their said shipment was $568.70, and the reasonable value thereof in the city of Regina at the time of their arrival there and thereafter during the month of December was $1,039; that the bill of lading issued by the defendant to the plaintiff at the time of the shipment of said vegetables was in the usual form of bills of lading issued by said defendant under the

interstate commerce regulations in force at said time, and that it had indorsed upon it the following provision:

"Section 2. In issuing this bill of lading, the company agrees to transport only over its own lines, and except as otherwise provided by law, acts only as agent with respect to the portion of the route beyond its own lines. No carrier shall be liable for loss, damage or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed."

The trial court upon the foregoing facts made its finding to the effect that the defendant was guilty of negligence in failing to notify the Canadian Pacific Railway that it held a good and sufficient indemnity bond from the plaintiff for the payment of the freight and other transportation charges on said carload of vegetables, and also in failing to notify the Canadian Pacific Railway that plaintiff was making arrangements for the sale of said carload of vegetables to other persons, and further found that the defendant had violated its duty as a common carrier and agent of said plaintiff in failing to notify the plaintiff that the carload of vegetables had been rejected by the Regina Fruit Company, and in failing to notify the said Canadian Pacific Railway Company · to hold the said carload of vegetables subject to the order of the consignor. The court further found that by reason of the violation of its obligation to the plaintiff as a common carrier, the said plaintiff had been damaged by the loss of said carload of vegetables in the sum of $568.70, with interest thereon from December 30, 1913, at the rate of seven per cent per annum, no part of which has been paid. Judgment was accordingly rendered and entered for said sum with interest from said day, and from such judgment the defendant prosecutes this appeal.

In discussing the questions presented on this appeal, it is to be noted at the outset that the cause of action, as set forth in the plaintiff's complaint, is one sounding in conversion of the plaintiff's goods, while they were in the possession and under the control of the defendant as a common carrier between the point of shipment and the point of destination of these goods. It is expressly alleged "that said

defendant, together with its connecting lines, was a common carrier of freight and passengers between the said two cities." It is further alleged "that the defendant unlawfully and wrongfully sold and disposed of said goods without prior or any notice to or knowledge of plaintiff, and contrary to the will, and against the instructions of plaintiff." The only breach of duty alleged to have been committed by the defendant is that just above quoted.

[1] Upon such a complaint it would seem to be clear that a recovery by the plaintiff could only be had upon proof either that the defendant, as a matter of law, sustained the relation of a carrier of the plaintiff's goods at the time of their alleged unlawful conversion, or that if it did not stand in this relation at said time, it had so contracted with the plaintiff in relation to the carriage of said goods to their destination as to be liable for whatever wrong or loss was inflicted upon plaintiff by any other carrier or bailee of said goods.

[2] That the defendant by the acceptance of said goods from said plaintiff for transportation over its railroad lines to their destination and thence over the connecting lines of other carriers to the destination of said goods did not have imposed upon it by common law any liability as a carrier of said goods beyond the terminal of its own lines would seem to be well settled. The rule is thus stated in Elliott on Railroads (vol. 4, sec. 1432) : "As a general rule no carrier is bound by law to accept and carry goods beyond the terminus of its own lines. In the absence of any agreement, either express or implied, for transportation beyond its own lines, the common law liability of an independent carrier is performed by safely transporting the goods over its own lines and delivering them to the consignee or connecting carrier, as the case may be. If in such case goods are merely to be delivered by the initial carrier for further transportation, the former is considered as a forwarding agent, rather than a carrier, as to such further transportation, and is not liable for the default of subsequent carriers." (See 4 R. C. L., p. 896, and cases cited.) [3] Neither was the defendant under any liability as a carrier for the plaintiff beyond its own lines by any federal statute, defining the rights and liabilities of carriers of interstate commerce beyond the boundaries of the United States. The so-called "Carmack

187 Cal.—46

Amendment'' to the Hepburn Act (34 U. S. Stats. at Large, pt. I, p. 595, [4 Fed. Stats. Ann., 2d ed., pp. 547, 568; U. S. Comp. Stats., secs. 8604a–8604aa]), was in existence at the time of the shipment of the goods in question from a point in the United States to a foreign country, and it has been held that this act was by its terms confined in its application to strictly interstate commerce and was not applicable to a case where the shipment was to a destination outside of the United States. (*Best* v. *Great Northern Ry.*, 159 Wis. 429, [150 N. W. 484]; *Chicago etc. Co.* v. *Jewett*, 169 Wis. 102, [171 N. W. 757]; *Hamlen* v. *Illinois Cent. Ry.*, 212 Fed. 324; *Burke* v. *Gulf etc. Ry.*, 147 N. Y. Supp. 796.) The Carmack Amendment was subsequently replaced by what is known as the Cummings Act, adopted in March, 1915, [4 Fed. Stats. Ann., 2d ed., p. 506; U. S. Comp. Stats., secs. 8592, 8604a], which did have the effect of extending the liability of the initial carrier so as to cover losses upon connecting lines, but the shipment in question having been made in 1913, does not come within the terms of this act. [4] If, therefore, the defendant was liable to plaintiff as the carrier of his goods, or is responsible for their safekeeping beyond its own lines, that liability must be found in some contract between the defendant and the plaintiff creating it. The first place to look naturally for such an agreement is to the contract of shipment as contained in the bill of lading issued by the defendant upon receipt of the plaintiff's goods. This bill of lading was introduced in evidence and is in the standard form of such contracts, approved by the Interstate Commerce Commission. The provision in said bill of lading, defining and limiting the defendant's liability as a carrier, is to be found in section 2 thereof, above quoted; and in view of the express limitation of the defendant's liability as a carrier of the plaintiff's goods over its own lines, and of the further fact that whatever loss the plaintiff sustained was occasioned by the alleged conversion of said goods by another carrier beyond the defendant's own lines, it would seem to follow that in so far as the plaintiff has counted upon the conversion of its goods by this defendant in the capacity of a carrier of said goods, he would not be entitled to recover damages for said conversion in this form of action; and, in so far as the findings and judgment of the trial court in the plaintiff's favor were predicated upon the

existence of any such liability, the trial court was clearly in error. [5] The plaintiff, however, seeks to sustain this judgment upon the ground that the trial court has found that the defendant was guilty of negligence in the specified respects above referred to in our *résumé* of the findings of fact. It would seem to be a sufficient answer to this contention to point to the fact that this is not an action for damages based upon negligence. It is simply an action for damages for conversion. The defendant is sued as a carrier wrongfully converting the plaintiff's goods to its own use. The allegation in the plaintiff's complaint that the defendant at the time of such conversion held the plaintiff's indemnity bond guaranteeing the payment of the freight charges upon said goods in the event of the consignee's refusal to receive or pay for the same was a necessary averment in order to the showing that the defendant's alleged sale of said goods to pay the transportation charges thereon was a wrongful act. There is no other alleged breach of duty on the part of said defendant pleaded, or attempted to be pleaded, in plaintiff's complaint. The defendant's answer consisted simply in denials of the plaintiff's averments, with the added defense by way of amendment thereto, setting forth that its liability as a carrier terminated, under the Carmack Amendment, with the delivery of said goods to connecting carriers beyond its own lines. Upon the issues as thus made up, the trial court proceeded to make findings as to the defendant's liability for the conversion of said goods as the carrier thereof, and also as to the defendant's liability for negligence in the respects above set forth. In so far as such findings refer to the defendant's liability as a carrier for the conversion of said goods, they are entirely unjustified by the evidence in the case; and in so far as said findings undertake to hold said defendant guilty of negligence, they are entirely beyond the issues in the case, and hence upon either ground could not have been made the basis of a judgment in plaintiff's favor.

At the close of the plaintiff's case the defendant made a motion for a nonsuit, specifying as one of the grounds thereof that the suit being one for conversion, no cause of action against the defendant had been shown. This motion should have been granted. The motion of the defendant for a new trial was specifically made upon the ground that the

evidence was insufficient to show any liability for loss occurring beyond its own lines. This motion should also have been granted. Both of these motions were denied by the trial court, and for these errors the judgment is reversed.

Wilbur, J., Sloane, J., Shurtleff, J., Lennon, J., Waste, J., and Shaw, C. J., concurred.