BEST, Appellant, vs. GREAT NORTHERN RAILWAY COMPANY, Respondent.

*December 11, 1914—January 12, 1915.*

*Carriers: Injury to goods: Liability of initial carrier: Bill of lading: Carmack amendment: Shipment to foreign country: Deviation from contract: Evidence: Presumption: Competency: Instructions to jury.*

1. Under a bill of lading, issued upon a shipment of goods from Superior to Winnipeg, stating that the carrier issuing it agrees to transport only over its own line and, except as otherwise provided by law, acts only as agent with respect to the portion of the route beyond its line, and that no carrier shall be liable for

loss or damage not occurring on its portion of the route, except as such liability is or may be imposed by law, "but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed," the liability of the initial carrier was confined to its own line, unless a greater liability was imposed by law.

2. The Carmack amendment to the Interstate Commerce Act (34 U. S. Stats. at Large, 595, ch. 3591) applies only to shipments from one state to another, and not to a shipment from one state to a foreign country.

3. Where the contract of shipment was closed, bill of lading issued, and goods placed in the car, and defendant had held the car for forty days to accommodate the shipper and then, needing the car, wired for instructions and was advised that the shipper would return in a few days and would then send the car on to destination, it was not liable for negligence of a connecting carrier, as for deviation from contract, merely because it forwarded the car without awaiting the shipper's return.

4. Evidence that goods were properly carried by the initial carrier, without negligence or breach of duty, to the end of its line, and there delivered to the connecting carrier, in connection with the presumption against the last carrier, is *held* sufficient to support a finding of the jury that the goods were damaged after delivery to the latter.

5. Evidence that when the car in which plaintiff's goods were shipped arrived at destination, it being under seal while *en route*, there were found in it goods not shipped by plaintiff, would not justify an inference that the goods had been unloaded from the car after being placed therein and then injured in reloading.

6. In an action against a common carrier to recover for damage to household goods in transit, it being claimed by the defendant that the injury resulted from the goods not being crated, evidence was admissible as to the effect on such goods of being shipped a long distance without crating.

7. A recital in a bill of lading that the goods were "received in apparent good order," relates to the condition of the goods, not to the manner of loading, and does not relieve the shipper of the burden of proof as to proper loading.

8. An instruction to the effect that a railway company is not liable for damage to furniture caused by the ordinary jerks and jars of train movements, "or in stopping or starting of the trains," was not erroneous as giving the jury to understand that negligent stopping or starting of trains was referred to.

9. An instruction to the effect that in the absence of direct evidence that injury to goods in transit was caused by defendant, the initial carrier, the jury might presume that it was caused by the last carrier, was correct.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. Ross, Circuit Judge. *Affirmed.*

This action was brought to recover damages for injuries to plaintiff's goods by alleged failure to safely carry the same from the city of Superior to Winnipeg, Manitoba.

The answer denies generally the material allegations of the complaint, and sets up that defendant received the shipment on the 7th of April, 1910, to be carried over its line from Superior to Emerson, a point on the boundary line between the United States and the Dominion of Canada, and agreed to transport in the usual course of business pursuant to the terms of two agreements, viz. bill of lading and property release. The answer further sets up the special contract limiting liability; that the defendant received shipping orders and payment of freight, and in compliance with such orders the goods were shipped; that the property arrived at Emerson and was promptly delivered to the Canadian Northern Railway Company; that none of the property was damaged while on defendant's line, and if damage occurred at all it was while the property was on the Canadian Northern railroad.

The jury returned the following verdict:

"(1) Was the property in question damaged in transit from time of loading to delivery at Winnipeg? *A.* Yes.

"(2) If you answer question 1 'Yes,' in what amount was it damaged? *A.* $1,000.

"(3) Was the said property put into the car in such manner as to render the same reasonably secure against damage from transportation to Winnipeg under ordinary conditions? *A.* No.

"(4) If you answer question 3 'No,' to what extent, if at all, did the manner of loading the car contribute to the damage? *A.* $300.

"(5) If you answer question 1 'Yes,' was the damage to said property caused by any want of ordinary care on the part of the defendant or of the Canadian Northern Railway Company? *A.* Yes.

"(6) If you answer question 5 'Yes,' which of the two

railroads caused such damage?    A.  Canadian Northern Railway Company."

The usual motions were made by plaintiff and denied and judgment entered for defendant dismissing the complaint, from which judgment this appeal was taken.

*H. V. Gard,* for the appellant.

*J. A. Murphy,* for the respondent.

KERWIN, J.    Counsel for appellant contends that she was entitled to judgment on the verdict on four separate grounds, namely: (1) Because under the contract the defendant undertook to carry the goods through to Winnipeg.    (2) Because the Carmack amendment to the Interstate Commerce Act makes the defendant, as initial carrier, liable for damages caused by the connecting carrier.    (3) Because the defendant deviated from the contract of carriage and thus made itself an insurer; and (4) Because there is no evidence to support the finding of the jury that of the two roads the Canadian Northern Railway Company caused the damage.

1. The shipment was made under two so-called contracts, namely, a "bill of lading" and "property release."    The bill of lading recited that the goods were received by defendant in apparent good order except as noted, consigned and destined to Winnipeg, and that defendant agreed to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to destination.    The conditions made a part of the bill of lading provided, among other things:

"Sec. 2.  In issuing this bill of lading this company agrees to transport only over its own line, and except as otherwise provided by law acts only as agent with respect to the portion of the route beyond its own line.

"No carrier shall be liable for loss, damage, or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next car-

rier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed."

The property release provided in substance that, in consideration of defendant having received the property from plaintiff for transportation from Superior to Winnipeg, the plaintiff released the defendant and all other transportation companies over which the property must pass to arrive at its destination

"from all liability from chafing, breakage, shrinkage, loss or damage of whatever kind, except such as may occur from negligence of company by collision of trains, or by cars being thrown from the track in course of transportation.

"And for the further consideration of the lower rate hereby secured, I do hereby declare the value of all property and goods shipped under this contract to be $10 dollars per hundred weight, said lower rate being given by the *Great Northern Railway Company* solely upon the basis of said valuation. And in consideration of said reduced rate, I further agree that, in case of loss or damage to said property, or to any part thereof, my recovery for such loss or damage shall not exceed the above valuation. . . ."

It is undisputed that the defendant road terminated at the Canadian line and that the property in question was delivered by defendant to the Canadian Northern Railway Company for carriage to destination. We think it clear under the terms of the contract of carriage between plaintiff and defendant that the contract confined the defendant's liability to its own line, unless such liability is imposed by law.

2. But it is argued that the Carmack amendment to the Interstate Commerce Act (34 U. S. Stats. at Large, 595, ch. 3591) makes the initial carrier liable, therefore the defendant is liable for damage occurring on the Canadian Northern road, to which said property had been delivered. The difficulty with this argument is that the Carmack amendment does not apply to the case because the shipment here

was not from "a point in one state to a point in another
state," but from a point in one state to a foreign country, and
under such circumstances the Carmack amendment does not
apply.  *Burke v. G., C. & S. F. R. Co.* 147 N. Y. Supp.
794; *Houston, E. & W. T. R. Co. v. Inman* (Tex. Civ. App.)
134 S. W. 275.

3. There is no merit in the claim that defendant is liable
for negligence of the connecting carrier because of deviation
from contract with the shipper.   After the goods were placed
in the car, bill of lading issued, and contract of shipment
closed, by which the goods were destined for Winnipeg, Mani-
toba, the car was by consent of parties permitted to remain
at Superior for forty days or more on payment by the shipper
of $1 per day.   The defendant was not obliged to keep the
car out of service by further holding it at Superior, and there
was neither breach of contract nor deviation from any instruc-
tion which the plaintiff had a right to require compliance
with.

4. It is further insisted that there is no evidence to support
the finding of the jury that the damage occurred on the Ca-
nadian Northern railroad.   True, there is little evidence, if
any, of negligence on the part of the Canadian Northern
Railway Company, or that the property was damaged while
in possession of that road.   But the evidence in the record in
connection with the presumption that the damage occurred
while the property was in the possession of the last carrier
was sufficient to support the finding of the jury.   Counsel for
appellant, however, argues that the court erred in charging
on this presumption against the last carrier.   This court has
ruled against such contention.   *Stolze v. A. A. R. Co.* 148
Wis. 205, 134 N. W. 376; *Tradewell v. C. & N. W. R. Co.*
150 Wis. 259, 136 N. W. 794.   Moreover, there is consider-
able evidence to the effect that the car was properly conveyed
from Superior to the Canadian line, and that no negligence
or breach of duty occurred while the car was in possession of

the defendant, therefore we conclude that there was no error in refusing to disturb the finding of the jury on this point.

5. It is lastly argued that the court below should have granted a new trial on the ground of several alleged errors. Point is made that the court erred in excluding evidence to the effect that there were goods in the car when opened at Winnipeg not shipped by plaintiff. The evidence of conductors in charge of the car over defendant's line is to the effect that the car was under seal while passing over defendant's line. After it was loaded at Superior the warehouseman sealed it, but the evidence does not show how soon after loading it was sealed. The contention of appellant is that evidence that there were goods in the car which did not belong to plaintiff raised an inference that the goods were either partly or wholly unloaded from the car before shipment and put in storage and afterwards reloaded in a haphazard manner, and that such manner of reloading probably caused the damage. There is no basis in the evidence for such inference.

Counsel for appellant complains of the admission of evidence as to the effect on general household goods shipped a long distance without being crated. The contention in the case was that the damage to the goods was caused because they were not crated, and that issue was sharply contested. We think there was no prejudicial error in the admission of this evidence.

Error is assigned on the charge as to burden of proof. It is said that it was error to put the burden of proof as to proper loading of the goods upon the plaintiff, because of the recital in the bill of lading to the effect that the goods were received in apparent good order. The recital related to the condition of the goods, not to the manner of loading. It was the duty of the plaintiff to properly and safely load the goods in the car so they might be safely carried in the ordinary operations and movements of the train. The burden of proof that the goods were properly loaded was therefore upon the plaintiff.

The court charged the jury as follows:

"You are instructed that the railway company cannot be liable for chafing or marking or scratching or the coming apart or other damage to the furniture caused by the ordinary jerks and jars of train movements, *or in stopping or starting of the trains.*"

The last part, "or in stopping or starting of the trains," is complained of on the ground that the jury would understand it to mean that the defendant could not be held liable for negligent stopping or starting of trains. We do not think the jury would so understand it, but on the contrary would understand it to mean the ordinary stopping or starting of the trains. Other parts of the charge make it clear that this was the construction intended, and must have been so understood by the jury.

The court charged:

"You may indulge the presumption, in the absence of direct evidence of negligence on defendant's part, that the damage did not result from negligence on the part of the defendant, and that such damage did result from negligence on the part of the Canadian Northern Railway Company. That last as applying to question 6."

This instruction was proper. *Stolze v. A. A. R. Co.* 148 Wis. 205, 134 N. W. 376; *Tradewell v. C. & N. W. R. Co.* 150 Wis. 259, 136 N. W. 794.

Some other errors are assigned by counsel for appellant, all of which have been examined. We find no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.