Alwine et al. *v.* Pennsylvania Railroad Company, Appellant.

Argued March 18, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Windsor F. Cousins,* with him *Nauman, Smith & Hurlock,* for appellant.

*Wm. H. Earnest,* for appellees.

Opinion by Parker, J., October 3, 1940:
One question of law is raised by this appeal. Is the

delivering carrier of a shipment of cattle consigned by the owners to themselves on a through bill of lading from Canada to a point in Pennsylvania liable to the owners for damages not occurring on the lines of that carrier but within the United States on the lines of an intermediate carrier?

The essential facts are not in dispute as they were agreed upon by stipulation for the purposes of this appeal. The shipment originated about August 29, 1934, at Stratford, Ontario, Canada, when a *through bill of lading* was delivered by the initial carrier, Canadian National Railways, to the plaintiffs which stipulated that "no carrier shall be liable for damage or injury not occurring on its portion of the through route ...... except as such liability is or may be imposed by law. Unless a different agreement is made with connecting carriers, in respect to transportation on their respective lines, the terms and conditions hereof shall apply to the transportation by each carrier on any portion of the route to destination." The form of the contract was published in tariffs filed with the Canadian Railway Commission and the Interstate Commerce Commission. This bill of lading specified Middletown, Pennsylvania, as the destination and the defendant as the delivering carrier. The shipment passed over the Canadian Railway to Black Rock, New York, where it was delivered to New York Central Railroad Company which transported the freight from there to Buffalo, New York, when it delivered it to defendant which, in turn, transported it to the destination. Certain of the cattle were injured while in the custody of the intermediate carrier and this action is brought to recover the resulting damages.

Suit having been brought against the defendant by the owners, who were both consignors and consignees, a verdict was rendered for plaintiffs and a court of common pleas refused defendant's motion for judgment

n. o. v. Such refusal is assigned as error. The motion was refused on the ground that under an amendment to the Interstate Commerce Act (49 USCA §20, par. [11] and [12]) the delivering line is responsible for all damages caused by any of the participating carriers, with right of recoupment against the carrier on whose line the damages occurred.

The appellees and the court below relied, in support of their conclusion, exclusively on the principles announced in *Galveston, H. & S. A. Ry. Co. v. Woodbury,* 254 U. S. 357, 41 S. Ct. 114. As we are all of the opinion that the Woodbury case and the principles enunciated therein are not applicable to the facts in this case and that the plaintiffs are not entitled to recover, it will be necessary to examine the entire subject presented that we may answer the question posed and show that the Woodbury case does not rule this case.

The entire controversy depends upon a proper construction of a part of §20, par. (11), of the Interstate Commerce Act, printed in the margin.[1]

"The settled federal rule is that, in the absence of statute or special contract, each connecting carrier on

---

[1] "Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading ......; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State, Territory, or the District of Columbia to a point in another State or Territory, or from a point in a State

a through route is bound only to safely carry over its own line and safely deliver to the next connecting carrier": *Oregon-Washington R. & Nav. Co. v. McGinn*, 258 U. S. 409, 413, 42 S. Ct. 332; *Michigan Cent. R. Co. v. Myrick*, 107 U. S. 102, 107, 1 S. Ct. 425, 429; *Michigan Cent. R. Co. v. Mineral Springs Mfg. Co.*, 16 Wall. 318, 324, 21 U. S. S. C. Reports 297. Originally the liability of a connecting carrier for the safety of property delivered to it for transportation commenced when it was received and ended when it was delivered to and accepted by a succeeding carrier: *Pratt v. Grand Trunk Ry. Co.*, 95 U. S. 43, 24 U. S. S. C. Reports 336.

The special contract disclosed by this bill of lading placed no additional responsibility in that respect on the delivering line. On the contrary, it provided against the liability sought by the plaintiffs to be imposed on defendant. So far as we have been able to discover, the Interstate Commerce Act is the only statute dealing with the liability of the respective carriers in a shipment of this character so we are required to determine whether that statute makes the delivering line responsible for damages occurring within the United States on lines of a preceding carrier where the shipment originates in an *adjacent foreign country* and is consigned under a *through* bill of lading. As we are all of the opinion that the court below erred in sustaining the shipper's contention that the decision in the Wood-

or Territory to a point in the District of Columbia, or from any point in the United States to a point in an adjacent foreign country, or for transportation wholly within a Territory, or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable ...... for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading."

bury case, *supra*, is applicable here, it becomes necessary to construe the section of the Commerce Act involved. By considering the subject in that order we will be placed in a better position to determine the pertinence of the Woodbury case.

The section deals only with such shipments over two or more lines as are made on a *through* bill of lading. In precise words it describes the carriers and transportation to which the terms and provisions apply, dealing with shipments within the United States between different states, territories, and the District of Columbia and with shipments *from* any point in the United States *to* a point in an adjacent foreign country. Where transportation to or from a foreign country is not involved the direction becomes immaterial and it is clear that it applies to movements in any direction. When it turns to the subject of shipments involving adjacent foreign territory the words very definitely limit the application to movements to a foreign country.

There is not the slightest ambiguity in the use of the language employed and it would grossly distort the meaning to add to the field shipments from an adjacent foreign country to a point in the United States. This conclusion is supported when we note the studied effort of Congress to avoid any misunderstanding as to the limits within which the amendment is to apply. To disregard the plain words used would be equivalent to judicial legislation. The rule followed in all jurisdictions is stated in §51 of our Statutory Construction Act (46 PS §551): "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

Even if we have resort to auxiliary rules of construction they will confirm our conclusion. In case of ambiguity resort may be had to the history of the statute: *Prussian v. United States*, 282 U. S. 675, 678, 51 S. Ct. 223.

By the Carmack amendment to the Hepburn Act of June 29, 1906, c. 3591, 34 Stat. 593, responsibility for damages was placed upon the initial line with respect to transportation wholly within the United States. It was held that this legislation was not applicable to any part of transportation to a foreign country: *J. H. Hamlen & Sons Co. v. Ill. Cent. R. Co.*, 212 Fed. 324. The result was a further amendment.

By the Cummins amendment of March 4, 1915, the field was extended to include transportation to a foreign country on a through bill of lading. The scope of the act was considered by the Interstate Commerce Commission in Bills of Lading Cases, 52 I. C. C. 671, 683 (April 14, 1919), where it said: "On March 4, 1915, Congress enacted the first Cummins amendment, so called, which became effective June 2, 1915, 38 Stat. L., 1196. It extended the territorial application of the provisions of the Carmack amendment to the transportation of goods within the territories of the United States, the District of Columbia, or to goods *exported* to adjacent foreign countries ......" (Italics supplied.)

This was a definite expression to the effect that the law at the time dealt only with exports to a foreign adjacent country. Such was the interpretation of the chapter by the agency of the federal government designated by Congress to administer the act. Bills of lading were provided for and in that immediate connection liability for damages was fixed, the area covered being the same as in the preceding amendment. The practice with relation to form and substance of bills of lading, in that they attempted to limit liability only as to exports and not as to imports, was well established when Congress again amended the chapter.

By the Newton amendment of March 4, 1927 (c. 510, 44 Stat. 1448), a further change was made by making the transportation company delivering the property liable for damages occurring on lines of a preceding car-

rier where a through bill of lading was issued. The identical language defining the field of transportation with respect to exports to foreign countries was repeated. As the change was made to place further liability on carriers with a presumed knowledge of the practice prevailing and various decisions of the courts, it is only fair to assume that Congress would have extended the act so as to cover imports from foreign adjacent countries had they deemed that the public interest required it and it was proper so to do.

The evidence shows that the Canadian bill of lading for this shipment with limitation of liability was that published in tariffs filed with and accepted by the Interstate Commerce Commission. That tariff limited liability to the company on whose lines the damages were incurred. This was a further interpretation in harmony with our conclusions.

There is an additional item from an historical standpoint that is of importance. Notwithstanding the persistent repetition, in all the amendments of §20 (11), of the words "to a point in an adjacent foreign country", Congress was at the same time changing similar language in §1 of the act, dealing with the general scope of the act, that is, the general field that Congress undertook to regulate. Evidently prompted by the decision in the state court in the case of *Galveston, H. & S. A. Ry. Co. v. Woodbury,* 209 S. W. 432, Congress amended the first section so as to include transportation "from or to any place in the United States to or from a foreign country, but only in so far as such transportation or transmission takes place within the United States." It seems that if Congress, with this very matter in mind, had intended to expand the field of liability for damages to include imports as well as exports it would have said so in clear language. The amendment of February 28, 1920, c. 91, made changes in both §1 and §20 (11).

There may have been a cogent reason for not chang-

ing the wording of §20 (11) in this respect. It had been held that a provision making an initial carrier liable for damages occurring on a connecting line where a through billing was involved was not unconstitutional: *Atlantic Coast Line R. Co. v. Riverside Mills*, 219 U. S. 186, 31 S. Ct. 164. Also, see *Galveston, H. & S. A. Ry. Co. v. Wallace*, 223 U. S. 481, 32 S. Ct. 205, and *Railroad Retirement Board v. Alton R. Co.*, 295 U. S. 330, 358-359, 55 S. Ct. 758, 766. The basis of the decision in the Riverside Mills case was that the connecting line was the agent of the initial carrier and that a principal is liable for the acts of its agent. The courts have frequently pointed out limits to which Congress may not go in regulating movements in foreign countries. Joint through international rates are not required by law: *Lewis-Simas-Jones Co. v. Southern Pacific Co.*, 283 U. S. 654, 660, 51 S. Ct. 592, 595. The Interstate Commerce Commission can fix rates to the border but not beyond the boundaries of this country: *Black Horse Tobacco Co. v. Ill. Cent. R. Co.*, 17 I. C. C. 588. A United States railroad may not be required to furnish cars for transportation in an adjacent foreign country: *St. Louis, B. & M. Ry. v. Brownsville Nav. Dist.*, 304 U. S. 295, 58 S. Ct. 868. While we do not mean to infer that liability for damages occurring on a connecting line within the United States may not be imposed on such connecting carrier, Congress may have had enough doubt about the constitutionality of so doing to refrain from action for the time being.

We are of the opinion that *Galveston, H. & S. A. Ry. Co. v. Woodbury*, supra, does not rule this case either specifically or in principle. To distinguish that case it will be necessary to make a brief reference to the facts there involved. Mrs. Woodbury purchased a ticket entitling here to travel from Timmins, Ontario, Canada, to El Paso, Texas, and return, with stop-over privileges. On March 14, 1917, she took the Galveston, H. & S. A.

Railway at San Antonio, Texas, for El Paso, Texas, and checked her trunk, which she took with her. Her claim was for loss of the trunk between those cities in Texas on lines of plaintiff in error. The loss was admitted and the jury found the value of the baggage to be $500. The defense of the carrier was that under its tariffs filed with the Interstate Commerce Commission recovery was limited to $100. Under Texas law such limitation was invalid. The Supreme Court held that since her local trip was part of through interstate transportation the federal law governed and her right of recovery was limited to $100.

The limitation of liability upheld by the Supreme Court existed independent of the Carmack amendment. "Contracts for limited liability, when fairly made, do not contravene the settled principles of the common law preventing the carrier from contracting against its liability for loss by negligence": *Geo. N. Pierce Co. v. Wells Fargo & Co.*, 236 U. S. 278, 35 S. Ct. 351; *New York C. R. Co. v. Lockwood*, 17 Wall. 357, 21 U. S. S. C. Reports 627; *Hart v. Penna. R. Co.*, 112 U. S. 331, 5 S. Ct. 151.

Mrs. Woodbury contended that §1 of an act to regulate commerce (Act of February 4, 1887, as amended) did not apply to the transportation of passengers from a foreign country to a point in the United States. In answering the claim, Mr. Justice BRANDEIS, speaking for the court, said (p. 359): "To this there are two answers. The first is that the transportation here in question is not that of a passenger, but of property. *Boston & Maine Railroad Co. v. Hooker,* supra [233 U. S. 97, 34 S. Ct. 526]. The second is that the act does apply to the transportation of both passengers and property from an adjacent foreign country, such as Canada. Section 1 declares that the act applies to 'any common carrier ...... engaged in the transportation of passengers or property ...... from any place in the

United States to an adjacent foreign country.' A carrier engaged in transportation by rail *to* an adjacent foreign country is, at least ordinarily, engaged in transportation also *from* that country to the United States. The test of the application of the act is not the direction of the movement, but the nature of the transportation as determined by the field of the carriers' operation. This is the construction placed upon the act by the Interstate Commerce Commission. *International Paper Co. v. D. & H. Co.*, 33 Interst. Com. Com'n R. 270, 273, citing *T. & P. Ry. Co. v. I. C. C.*, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940."

The court below was of the opinion that the same reasoning should be applied in construing the expression "from any point in the United States to a point in an adjacent foreign country", used in §20 (11) to define the circumstances under which initial and delivering lines were made responsible for damages occurring off their lines. At first impression one might be led to the same conclusion, but when we consider the subject dealt with and the history of the legislation it is apparent that the plain and unambiguous words of §20 (11) cannot be disregarded.

In passing we call attention to the numerous changes in this legislation since 1887, before, between and after the dates applicable in the Woodbury case and this case, and to the present state of the law. It has now been simplified and clarified in a number of respects.

The portion of the first section of the Commerce Law construed in the Woodbury case is a general provision describing the field which Congress has taken over. It defines the common carriers and forms of transportation about which it proposes to legislate. As the law was developed by amendments, Congress exhibited a clear intention to legislate generally with respect to interstate transportation including certain phases of foreign transportation subject to limitations imposed by

the constitution and its inherent limitations as to extra-territorial legislation. That portion of the first section dealt with the space to be occupied rather than the direction in which transportation moved. Consequently, *from* was held to be equivalent to *between*. Mr. Justice BRANDEIS, in the Woodbury case, expressed the thought thus: "The test of the application of the act is not the direction of the movement, but the nature of the transportation as determined by the field of the carriers' operation." Considering the law as it was when this cause of action arose, we note that these general provisions in the first section are followed by regulations as to many phases of transportation and, in particular, by §20 (11) and (12) dealing with the responsibility of initial and delivering lines for damages occurring off their lines. This legislation was specific and not general. It defined the carriers and the transportation to be affected by the amendment. All carriers and all transportation in the general field were not affected by it. Congress employed clear and unambiguous language to define the carriers who were to be liable for acts of others as well as the transportation for which such carriers were to be held responsible.

It is significant that neither the appellees nor the court below have suggested any respect in which the language of §20 (11) is ambiguous. We may not assume an ambiguity for the purpose of applying auxiliary rules. Because the same phrase used in a different connection and under different circumstances was ambiguous does not require us to discard the plain meaning of the words employed in §20 (11), where there is no ambiguity.

On the other hand there are numerous reasons, to some of which we have referred, why the phrase should be held to mean just what it says. When the phrase in question was introduced into §20 it limited the carriers made liable for damages occurring off their lines to

*initial* carriers, showing that it was not legislating in that respect as to all carriers within the general scope of the act. It likewise limited transportation involving foreign shipments in clear language. Congress having exhibited an intention to limit both fields, we may assume that it meant just what it said.

When the phrase in question was introduced the limitation to initial carriers was in harmony with the limitation to export transportation. Otherwise we would have had extra-territorial legislation. The same phrase was retained in the amendment but the delivering lines were made responsible without any indication that the meaning of the phrase was to be changed.

After the act had been given the test of practice and Congress had had the benefit of decisions of the Interstate Commerce Commission and the Supreme Court, the phrase in the first section was amended to cover export and import transportation but, as we have shown above, that very amendment retained the phrase in question in §20 (11). When that change was made the commission had interpreted §20 (11) as limiting liability of carriers where foreign transportation was involved to export transportation. When §1 of the Commerce Law was broadened to include export and import transportation and described the general scope of the act, it was all limited by the added phrase "but only in so far as such transportation or transmission takes place within the United States." This, however, dealt only with the general scope of the act.

Finally, since the law contained in §20 is a radical departure from the common law as applied to the liability of carriers for the acts of others, its effect should not be extended beyond the plain meaning of the language employed and its evident purpose.

All that we have said applies with equal force whether the damages arose on an intermediate line within the United States or outside. It cannot be contended that

the Carmack amendment took effect at the boundary between the United States and adjacent foreign territory for the amendment covers the entire movement and to so hold would do violence to the plain language of that amendment.

Judgment of the court below is reversed and it is directed that judgment be entered in favor of the defendant.