## REIDER v. THOMPSON.

### No. 12739.

United States Court of Appeals
Fifth Circuit.

July 20, 1949.

Rehearing Denied Aug. 22, 1949.

SIBLEY, Circuit Judge, dissenting.

Malcolm W. Monroe, New Orleans, La., for appellant.

Lillian Elizabeth Ridnour Haak, New Orleans, La., M. Truman Woodward, Jr., New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Rudolf Reider brought this suit against Guy A. Thompson, as Trustee of the Missouri-Pacific Railroad Company, Debtor, for alleged damage by the carrier to a shipment of twenty-one cases and twelve barrels of skins and wool owned by appellant, which had been shipped from Buenos Aires, Argentina to appellant at Boston, Massachusetts, by way of the Port of New Orleans, Louisiana.

The complaint purports to be brought under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20(11), and alleges that the carrier received the goods at New Orleans, "consigned, in bond, to the Collector of Customs at Boston, Massachusetts"; that upon arrival at its destination the shipment was damaged by water, stained and moldy, to the extent of $2,000, which amount, plus interest thereon, is sought by this suit.

The defendant filed a motion to dismiss the action which was granted by the trial court, on the ground that the complaint failed to state a claim upon which relief could be granted. This appeal is taken from that ruling.

The controlling questions presented are: (1) whether the Carmack Amendment is applicable to a shipment from a foreign country which is intended for uninterrupted transportation and delivery to a particular destination within the United States, and (2) whether the issuance of a bill of lading by a domestic carrier on such shipment gives the shipper a right to sue that carrier under the Carmack Amendment.

It appears from the bill of lading issued by the respondent carrier that the goods were received at New Orleans on August 10, 1944, from "H. P. Lambert Co., Inc." and the S. S. Rio Parana, and that they were consigned to H. P. Lambert Co., Inc., (shipper) "c/o Manufacturers Whse Destination Boston State of Mass In Bond to Collector of Customs". By stipulation between counsel for the respective parties, the ocean bill of lading governing the shipment while on voyage from Buenos Aires, Argentina to New Orleans, Louisiana, is also made a part of the record. It appears therefrom that the goods were originally shipped by "Emilio Rosler S. R. L." on the S. S. Rio Parana, to the order of "The First National Bank of Boston", notify "Rudolf Reider 39 South Street Boston Mass. U. S. A." The port of shipment is revealed as Buenos Aires and the port of discharge of the ship as New Orleans.

We are of opinion the Carmack Amendment does not extend the liability of domestic carriers to cover shipments arising in a foreign country, and intended for through transportation to a point within the United States. 49 U.S.C.A. § 20 (11); Alwine v. Pennsylvania R. Co., 141 Pa.Super. 558, 15 A.2d 507; Roberts, Federal Liabilities of Carriers, Vol. 1, Sec. 393.

There is persuasive authority from both Federal and state courts to the effect that shipments to and from non-adjacent foreign countries were not intended to be governed by the Carmack Amendment, and that actions to enforce liability against a domestic carrier for such foreign shipments could not be brought thereunder. Missouri Pacific R. Co. v. Porter, 273 U.S. 341, 47 S.Ct. 383, 71 L.Ed. 672; A. Russo & Co. v. U. S., 5 Cir., 40 F.2d 39; J. H. Hamlen & Sons Co. v. Illinois Cent. R. Co., D.C., 212 F. 324; Best v. Great Northern Ry. Co., 159 Wis. 429, 150 N.W. 484; Chicago, M. & St. P. Ry. Co. v. Jewett, 169 Wis. 102, 171 N.W. 757.

The mere issuance of a supplemental bill of lading by a domestic carrier to cover its portion of the transportation and delivery of a through foreign shipment does not interrupt or affect the continuity and foreign character of the shipment, so as to extend a carrier's liability to such foreign shipment under the Carmack Amendment. Mexican Light & Power Co. v. Texas Mexican Ry. Co., 331 U.S. 731, 67 S.Ct. 1440, 91 L.Ed. 1779; A. Russo & Co. v. U. S., 5 Cir., 40 F.2d 39. Manifestly, this is true where the carrier's bill of lading shows on its face that it was issued in furtherance of the original foreign shipment, and that no new, separate, or distinct domestic shipment was intended. A. Russo & Co. v.

U. S., 5 Cir., 40 F.2d 39; See also, U. S. v. Erie R. Co., 280 U.S. 98, 50 S.Ct. 51, 74 L.Ed. 187; Texas & New Orleans R. Co. v. Sabine Tram Co., 227 U.S. 111, 33 S.Ct. 229, 57 L.Ed. 442.

The Carmack Amendment was passed to enable a shipper to collect for damages to his shipment against the first of a series of carriers, leaving the initial carrier to his recourse against any intervening carriers which may have caused the damage. It was not intended to apply where, as here, a shipper brings an action not against the initial foreign carrier, but against an intervening domestic carrier, and attempts to hold that carrier responsible for damage that may have been caused by the foreign carrier. In such instance, if the intervening carrier were held liable, he might have no enforceable cause of action for recovery of his damages against the foreign carrier, if the latter were actually responsible. It becomes manifest that the Carmack Amendment was never designed or intended to hold a domestic carrier liable for damage to a foreign shipment under such circumstances, and it would be unjust to do so.

In this case the bills of lading reveal that a continuous and uninterrupted shipment "in bond" from a foreign country to a particular destination within the United States was contemplated. Under such circumstances, the language of the court in the case of Alwine v. Pennsylvania R. Co., 141 Pa.Super. 558, 15 A.2d 507, 512, is applicable here:

"Finally, since the law contained in § 20 is a radical departure from the common law as applied to the liability of carriers for the acts of others, its effect should not be extended beyond the plain meaning of the language employed and its evident purpose.

"All that we have said applies with equal force whether the damages arose on an intermediate line within the United States or outside. It cannot be contended that the Carmack amendment took effect at the boundary between the United States and adjacent foreign territory for the amendment covers the entire movement and to so hold would do violence to the plain language of that amendment."

The judgment is

Affirmed.

HUTCHESON, Circuit Judge (concurring).

Proffered by my brother, McCord, an opinion affirming, and by my brother, Sibley, one reversing the district judge, and told firmly by each to stand up like a man and be counted, I have at long last, but not without some slight misgivings ranged myself with McCord and the district judge and for his affirmance.

The misgivings I have do not spring from the over-all picture of the case. They spring entirely from the fact, which my brother, Sibley, has artfully pointed out, that if the words he quoted from the invoked section are construed, as he wants them to be, by themselves apart from their context in the section as a whole, as amended, and without regard to its long and informative judicial and legislative history and that of the Federal Bills of Lading Act, 49 U.S.C.A. §§ 81 to 124, it would be difficult to find fault with his conclusion. "This case falls within these words."

These misgivings, however, entirely disappear when consideration is given to the history of the section and the uniform course of decision[1] as to its non-applicability to shipments originating in foreign countries and the inapplicability of the Federal Bills of Lading Act[2] to shipments so originating. If, in short, the problem the case poses is examined in its setting as a whole and not narrowly and out of focus as centered in and solved by the selected words, I think it plain that my brother, McCord, has the right of it.

It is true that since this is not, under the Federal Bills of Lading Act, an order bill but a straight bill, and the shipper, as the

---

[1] See cases cited in the majority opinion, especially Alwine v. Pennsylvania R. Co., 141 Pa.Super. 558, 15 A.2d 507.

[2] Chesapeake & Ohio v. State Nat. Bank, 280 Ky. 444, 133 S.W.2d 511, at page 516, 130 A.L.R. 1306; Williston on Contracts, Vol. IV., Sec. 1116.

minority points out, will have to prove that the goods were in good condition when the railroad received them and that the damage sued for occurred afterwards, no great harm will come to the carrier from the suit if, as it claims, the damage complained of occurred on the ship.

But this is not an answer to the jurisdictional question whether the complaint states a claim under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20(11), and the district judge was right in dismissing it.

I concur in the opinion affirming the judgment.

SIBLEY, Circuit Judge (dissenting).

The plain, unambiguous words of Section 20(11) of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 20(11) uphold this suit. The applicable words are: "Any common carrier, railroad, or transportation company subject to the provisions of this Act receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading * * *." The Missouri-Pacific Railroad Co. is a railroad subject to the Interstate Commerce Act. It received this property at New Orleans, a point within a State, for transportation to Boston, a point in another State; it issued its receipt or bill of lading as it was bound to do, and incurred liability for any damage to such property caused by it or any other common carrier to which it delivered the property on the way to Boston, the destination named in its bill of lading. H. P. Lambert and Co. Inc. is named as consignor and consignee, but the allegation is that plaintiff was at

the time the owner. The necessary implication is that Lambert and Co., Inc., was acting for plaintiff. The case is squarely within the words of the Act. There is no federal case to the contrary.

The goods, it appears from the ship's bill of lading introduced by stipulation, came to New Orleans by the ship Parana from Buenos Aires, Argentina. The ship's bill of lading named Emilio Rosler as shipper, the port of shipment Buenos Aires, the port of discharge New Orleans, and stated the freight was paid at Buenos Aires. The consignee was stated in these words: "Shipped to the order of The First National Bank of Boston: Notice of arrival should be addressed to (if consigned to shipper's order) Rudolf Reider, 39 South Street, Boston, Mass." The ship issued no through bill of lading to Boston. It agreed only to deliver to the order of the Bank at New Orleans, giving notice of arrival to Reider. There is no privity between the ship and Railroad. Most likely the ship's bill of lading was sent by Rosler to the Bank with a draft on Reider for the purchase money of the hides, and Reider, on being notified of arrival, paid the draft and took up the ship's bill of lading and sent it to Lambert and Co., Inc. at New Orleans, who in Reider's behalf received the goods and arranged to ship them to Boston in bond to the Collector of Customs there. Reider's allegation that he was owner must be accepted as true on this motion to dismiss, the ship's bill of lading not being irreconcilable therewith. The only point argued about it is that it shows an intention that the goods should move in uninterrupted transit to Boston as final destination, so that its movement was foreign and not domestic commerce. The cited cases, Texas and N. O. R. Co. v. Sabine Tram Co., 227 U.S. 111, 33 S.Ct. 229, 57 L.Ed. 442; Railroad Commission of Louisiana v. Texas and Pacific Ry. Co., 229 U.S. 336, 33 S.Ct. 837, 57 L.Ed. 1215; Illinois Cent. R. Co. v. De Fuentes, 236 U.S. 157, 35 S.Ct. 275, 59 L.Ed. 517; Western Oil Refining Co. v. Lipscomb, 244 U.S. 346, 37 S.Ct. 623, 61 L.Ed. 1181; Missouri Pacific R. Co. v. Porter, 273 U.S. 341, 47 S.Ct. 383, 71 L.Ed. 672; and United States v. Erie Ry. Co., 280 U.S. 98, 50 S.Ct. 51,

74 L.Ed. 187, establish that. But that the commerce is foreign as well as interstate merely confirms the exclusive right of Congress to regulate it. No one of these cases construes or applies the regulation made by Section 20(11). Mexican Light and Power Co. v. Texas Mexican Ry. Co., 331 U.S. 731, 67 S.Ct. 1440, 91 L.Ed. 1779, applies the section to a through bill of lading from Sharon, Pennsylvania, to Laredo, Texas, "for export into Mexico", issued by Pennsylvania Railroad Co., where the goods were injured in Mexico. The suit was brought against the Texas Mexican Railway Co., the last carrier which handled the shipment in the United States. The latter had issued a new bill of lading at Laredo, without any new consideration, to facilitate carriage across the Mexican border. The court held the shipment originated under Section 20(11), Mexico being an adjacent foreign country. So that the liability for the damage done in Mexico was on the Pennsylvania Railroad Co. as the receiving carrier, and not on Texas Mexican Railway Co., notwithstanding the latter's bill of lading, which was held to be without consideration and void. That case rules nothing as to a reverse shipment originating in Mexico or any other foreign country for which Texas Mexican Ry. Co. might at Laredo give its bill of lading for transportation to a point in Pennsylvania. The State court cases of Aldrich v. Atlantic Coast Line R. Co., 104 S.C. 364, 89 S.E. 315; Best v. Great Northern Ry. Co., 159 Wis. 429, 150 N.W. 484; and Chicago, M. and St. P. Ry. Co. v. Jewett, 169 Wis. 102, 171 N.W. 757, relate to shipments moving out of the United States, and apparently at a time when an adjacent foreign country as destination was not named in the Section. Alwine v. Pennsylvania R. Co., 141 Pa.Super. 558, 15 A.2d 507, was probably correctly decided, for as it insists Sect. 20(11) is not ambiguous and means what it says, and it says nothing about a shipment coming into the United States "on *a through bill of lading*" (emphasis by the court). A. Russo and Co. v. United States, 5 Cir., 40 F.2d 39, was in admiralty for sea damage, the ship and the Missouri Pacific R. Co., having both issued bills of lading in Italy for transportation into the United States. Section 20(11) is not mentioned. The decision was that the Railroad was acting only as agent in respect of the ocean voyage and was not liable for what happened at sea.

In the present case there is no liability assumed for what happened at sea by this Railroad accepting the property at New Orleans and issuing its bill of lading. The sea voyage was over. Congress has not by Section 20(11) made liability to relate back to cover it. Neither the receiving nor delivering carrier, under Section 20(11), has any concern with that. The damage to the hides may have occurred by the fault of the ship, but the complaint alleges no such, for it alleges that the shipment was received by the Railroad in good condition and delivered in Boston in bad condition. The plaintiff has the burden of proving good condition at New Orleans, and must lose his case if he cannot prove it. There is no presumption of good condition because the hides are recited to be in casks and cases, contents and condition unknown, and such words relieve from any presumption. 9 Am.Jur.Carriers, § 422; St. Louis and Iron Mountain & S. Ry. Co. v. Knight, 122 U.S. 79, 7 S.Ct. 1132, 30 L.Ed. 1077, and under the Bills of Lading Act, 49 U.S.C.A. § 101. Application of Sec. 20(11) here cannot give rise to the hardship suggested of making the domestic carriers subject to the Act responsible for the fault of an importing foreign vessel.

Section 20(11) does not say "initial carrier", nor does it except goods which may have begun their travel in a foreign country. Its words are *"Any common carrier"* subject to the Interstate Commerce Act *"receiving property for transportation"* as stated shall issue the bill of lading and assume the liability for damage *"caused by it"* or other carriers who transport under that bill of lading. There is no language in the Section, no reason nor authority to the contrary. This case falls within the words Congress used.

On Petition for Rehearing.

Rehearing denied.

SIBLEY, Circuit Judge, dissents.