# REIDER *v.* THOMPSON, TRUSTEE, MISSOURI PACIFIC RAILROAD CO.

No. 403.   Argued February 7, 1950.—Decided March 13, 1950.

*Eberhard P. Deutsch* argued the cause for petitioner. With him on the brief was *Malcolm W. Monroe.*

*M. Truman Woodward, Jr.* argued the cause for respondent. With him on the brief were *Thomas T. Railey, Fred G. Hudson, Jr., Robert E. Milling, Jr.* and *Elizabeth Ridnour Haak.*

MR. JUSTICE MINTON delivered the opinion of the Court.

The question in this case is whether a claim for relief under the so-called Carmack Amendment to the Interstate Commerce Act has been stated against respondent carrier. The District Court held that a claim within the Amendment had not been stated. The Court of Appeals for the Fifth Circuit affirmed by a divided court. 176 F. 2d 13. Because the case presents an issue of importance in the application of a federal statute governing liability of common carriers for damage to goods transported by them, we granted certiorari. 338 U. S. 890.

The Carmack Amendment in pertinent part provides:

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading . . . ." 34 Stat. 593, 595, as amended, 49 U. S. C. § 20 (11).

Respondent railroad received a shipment of wool and skins at New Orleans, Louisiana, for transportation to Boston, Massachusetts, by way of its line and connecting carriers, and issued its original through bill of lading for the shipment. Petitioner, who alleged that he was the lawful holder of the bill of lading and owner of the goods, sued respondent, as receiving carrier under the Carmack Amendment, for damages, asserting that the shipment was in good order and condition when received by respondent at New Orleans and was damaged on arrival in Boston. Respondent filed a motion to dismiss on the ground that the complaint did not state a claim against respondent upon which relief could be granted. The Court of Appeals affirmed the District Court's order granting this motion and dismissing the suit.

It is not disputed that if these were all the facts in the case the courts below were in error. Clearly respondent is a common carrier subject to the Act, and a claim for relief against respondent, as receiving carrier, on account of damage to a shipment of goods moving from a point in one state to a point in another state was pleaded under the Carmack Amendment. See *Galveston, H. & S. A. R. Co.* v. *Wallace,* 223 U. S. 481. But from a stipulation filed in the District Court and considered with the pleadings, we learn that the shipment originated in Buenos Aires, Argentina. The goods were transported by steamship from there to New Orleans on an ocean bill of lading, freight for which was payable at Buenos Aires. What is stipulated to be an accurate English translation of the ocean bill of lading reads in part:

"The SHIPPER, SHIP, CONSIGNEE, DESTINATION AND GOODS which are specified in this bill of lading are the following:
SHIPPER: Emilio Rosler S. R. L.        SHIP: RIO PARANA

PORT OF SHIPMENT: Buenos Aires

PORT OF DISCHARGE OF THE SHIP New Orleans

destination of the goods: _____ (if the goods are to be transshipped out of the port of discharge)

SHIPPER TO THE ORDER OF: The First National Bank of Boston

Notice of arrival should be addressed to (if consigned to Shipper's Order) Rudolf Reider 39 South Street Boston Mass. U.S.A."

The domestic bill of lading issued by respondent at New Orleans recited that the goods were received from H. P. Lambert Co. and consigned to the same H. P. Lambert Co. at Boston. The Court of Appeals characterized this railroad bill as a "supplemental bill of lading" issued by the domestic carrier to cover its portion of the transportation and delivery of a "through foreign shipment," and held that the Carmack Amendment was not intended to apply to such a foreign shipment. The tests laid down in *United States* v. *Erie R. Co.,* 280 U. S. 98, and *Texas & New Orleans R. Co.* v. *Sabine Tram Co.,* 227 U. S. 111, were applied by the Court of Appeals in determining that the transaction was a "through foreign shipment." And *Missouri Pacific R. Co.* v. *Porter,* 273 U. S. 341, was relied on as authority for the proposition that the Carmack Amendment was not intended to apply to such a shipment.

Reliance on the cited cases is misplaced. The issue in the *Porter* case, *supra,* was totally different from the question here.[1] And whether the commerce is properly

---

[1] The Court there briefly alluded to the coverage of the Carmack Amendment. But the sole issue in the *Porter* case was whether federal regulation of bills of lading had covered the field to the exclusion of state regulation of the same subject matter. The Court's discussion of the Carmack Amendment there does not control our decision in this case.

characterized as foreign or domestic is, in our view of the case, not material.

The issue is whether this transaction is within the Carmack Amendment. But basically, the problem here is one of liability. The contract giving rise to liability—the bill of lading—is our primary aid in solving that problem. So we turn to the contract to ascertain whether it evidences a transaction within the Carmack Amendment.

Does the fact that the shipment in this case originated in a foreign country take it without the Carmack Amendment? We think not. There was no through bill of lading from Buenos Aires to Boston. The record does not show the slightest privity between respondent and the ocean carrier. The contract for ocean transportation terminated at New Orleans. Having terminated, nothing of it remained for the new, separate, and distinct domestic contract of carriage to "supplement." Even the parties to the ocean bill of lading and the domestic bill of lading were different. If the various parties dealing with this shipment separated the carriage into distinct portions by their contracts, it is not for courts judicially to meld the portions into something they are not. The test is not where the shipment originated, but where the obligation of the carrier as receiving carrier originated. *Rice* v. *Oregon Short Line R. Co.*, 33 Idaho 565, 198 P. 161; *Barrett* v. *Northern Pacific R. Co.*, 29 Idaho 139, 157 P. 1016; *Baltimore & Ohio R. Co.* v. *Montgomery & Co.*, 19 Ga. App. 29, 90 S. E. 740. Thus it is not significant that the shipment in this case originated in a foreign country, since the foreign portion of the journey terminated at the border of the United States. The obligation as receiving carrier originated when respondent issued its original through bill of lading at New Orleans. That contract of carriage was squarely within the provisions of the statute.

The case of *Alwine* v. *Pennsylvania R. Co.*, 141 Pa. Super. 558, 15 A. 2d 507, much relied upon by respondent

and the Court of Appeals, is not in point. We need not now determine whether that case was correctly decided. For purposes of this case it is sufficient to note that there the Pennsylvania court emphasized that the shipment came into this country on a *through* bill of lading from Canada. The contract of carriage did not terminate at the border, as in the instant case. Nor does *Mexican Light & Power Co.* v. *Texas Mexican R. Co.*, 331 U. S. 731, aid respondent. There an export shipment on a through bill of lading from Pennsylvania to the international boundary, destined for a point in Mexico, was damaged in Mexico. The Texas Mexican Co., the last in a series of carriers handling the shipment in this country, issued a second bill of lading at Laredo, Texas, for the carriage on into Mexico. Recovery was sought against the Texas Mexican Co. as initial (receiving) carrier under the Carmack Amendment. This Court held that it was not a receiving carrier because its duties were controlled by the first bill, and the second bill was without consideration and void. As the dissenting judge below said: "That case rules nothing as to a reverse shipment . . . ." And it could hardly be contended that respondent's domestic bill of lading here was void. As a matter of fact, the shipment in this case could not have moved an inch beyond New Orleans under the ocean bill; and the Carmack Amendment required respondent to issue a through bill of lading for the carriage from New Orleans to Boston.

We disavow, as did both the concurring judge and the dissenting judge below, any intimation that our holding might impose liability on a domestic carrier for damage attributable to an ocean carrier. The complaint in this case alleges that the shipment was received by respondent in good order and condition and was damaged when delivered. Unless petitioner can prove the case stated by his complaint, respondent is not liable.

The purpose of the Carmack Amendment was to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods. To hold otherwise than we do would immunize from the beneficial provisions of the Amendment all shipments originating in a foreign country when reshipped via the very transportation chain with which the Amendment was most concerned. Respondent was the receiving carrier squarely within the wording and meaning of the Carmack Amendment. The judgment of the Court of Appeals is

*Reversed.*

Mr. Justice Douglas and Mr. Justice Jackson took no part in the consideration or decision of this case.

Mr. Justice Frankfurter, dissenting.

The problem presented by this case is whether a shipment which constitutes an organic transaction in commerce between a non-adjacent foreign country and the continental United States for every other aspect of the Interstate Commerce Act should be treated as such for purposes of § 20 (11) of that Act, familiarly known as the Carmack Amendment. 49 U. S. C. § 20 (11). Since I agree with the answer given by the Court of Appeals I ought not to join in reversing its decision.

That court's position is supported by this Court's view of the matter in *Missouri Pacific R. Co.* v. *Porter,* 273 U. S. 341, 344, 345, read in the light of the criteria for determining what constitutes a shipment in foreign commerce. See *United States* v. *Erie R. Co.,* 280 U. S. 98. To be sure, the precise question now here was not the issue in the *Porter* case. But what was there said as to the scope of the Carmack Amendment in relation to such commerce with a non-adjacent foreign country was relevant to the immediate question in the *Porter* case con-

sidered in its true aspect. In order to decide the precise question of that case the Court had to consider the regulatory scheme of liability under the Interstate Commerce Act in its entirety. The conclusion of the *Porter* case—that the Carmack Amendment does not apply to an unbroken transaction of commerce with a nonadjacent foreign country—carried the authority of the two Justices, Butler and Brandeis, who between them had had the most comprehensive experience with the working of the Interstate Commerce Act. As Judge Hutcheson indicated in his concurring opinion below, the answer to our problem is not to be had by taking words of the Carmack Amendment out of the illuminating context of the regulatory scheme of which they are a part. A legal faggot ought not to be broken into verbal sticks.