## HAUCK v. GULF, C. & S. F. RY. CO.
### No. 14461.

Court of Civil Appeals of Texas.   Dallas.
Feb. 8, 1952.

Rehearing Denied March 14, 1952.

Callaway & Reed, O. D. Montgomery and Wm. Andress, Jr., Dallas, for appellant.

Wigley, McLeod, Mills & Shirley, Galveston, Donalson, Bullard & Kucera, Dallas, and Frank J. Wren, Fort Worth, for appellee.

CRAMER, Justice.

Appellant, plaintiff below, claimed damage to a shipment of rattan and rattan furniture shipped from Manila, Philippine Islands, to First National Bank of Dallas, notify R. E. Hauck, first by steamship to Wilmington, Los Angeles harbor, U. S. A., thence by rail by connecting carriers, the appellee, defendant below, being the last connecting railroad carrier, and who made delivery to plaintiff in Dallas.   The parties will be designated as in the trial court.

Plaintiff sought to hold defendant liable for damage to the shipment somewhere in transit, after it was delivered to the first railroad carrier, as delivering carrier, under the Carmack Amendment to the Interstate Commerce Act, as amended, 49 U.S.

C.A. § 20(11). Defendant disclaimed liability on the ground that the shipment moved from Manila to Dallas on a through ocean bill of lading, Manila being a nonadjacent foreign country and therefore not covered by the Carmack Amendment; and therefore not liable under the Carmack Amendment as the delivering carrier. The trial court, after hearing and sustaining special exceptions to plaintiff's pleadings, and after plaintiff had declined to amend, dismissed plaintiff's suit. From such dismissal plaintiff duly perfected this appeal.

Plaintiff briefs two points' and appellee two counter points. They are in substance: (1) The ocean bill of lading was not on its face a through bill of lading from Manila to Dallas, and for that reason the rail carrier's liability for damage is determined and controlled by the Carmack Amendment; therefore the trial court erred in sustaining the exceptions and dismissing the suit; (2) even if the ocean bill of lading is on its face a through bill of lading to destination, it incorporated, and adopted, by implied reference, the uniform bill of lading adopted by general order of the Administrator of the War Shipping Administration, providing that a forwarding by others than the ocean carrier should be subject to all the terms in the regular form of bill of lading used at the time by such other carrier, whether issued by it or not, and is in fact controlled by the Carmack Amendment; therefore the trial court erred in dismissing the suit.

Defendant counters by directly contrary views: (1) That the bill of lading was a shipper's order bill and shows the shipment was consigned to J. Gonzales—order of the First National Bank of Dallas—notifying R. E. Hauck, Dallas; that the Bank by endorsement instructed the shipment delivered to plaintiff; and (2) the uniform ship's bill of lading adopted by the Administrator of the War Shipping Administration did not contemplate that the shipment moving from Manila to Dallas on a through ocean bill of lading from a nonadjacent foreign country should be governed by the Carmack Amendment.

These points and counter points add up to a pure question of law as to whether the ocean bill of lading controlled through from Manila to Dallas; or only from Manila to Wilmington, Los Angeles Harbor, U. S. A., where it was transferred for further transportation by rail, and thereafter controlled by the terms of the standard form of rail bill of lading, whether such bill of lading was issued or not.

The material portions of the bill of lading issued in Manila by American President Lines, Ltd., are as follows:

"Ship { M.S.
{ S.S.   'Ruthland Victory' Voyage No. 8
Port of Loading     Manila
Shipper     J. Gonzales
Consignee     Order of: First National Bank of Dallas

If consigned to Order arrival notice to be addressed to Notify: R. E. Hauck, D.B.A. 3101 Oak Lawn, Dallas, Texas. (Without liability to carrier, see Clause 12 of Warshiplading referred to on reverse side hereof) Port of Discharge from Ship: San Francisco, thence by rail to overland Common Point (in Bond). G.D.H. Dallas Overland via San Francisco * * * Freight prepaid to S. F. only. Charges from S. F. to destination to be collected from consignee before delivery of goods * * * For delivery to connecting railway line to final destination."

The material portions of the "Conditions" on the bill of lading are as follows: "In every contingency whatsoever and even in case of deviation or of unseaworthiness of the ship at time of loading or at any subsequent time, the rights and obligations, whatsoever they may be, of each and every person having any interest or duty whatsoever in respect of the receipt, care, custody, carriage, delivery or trans-shipment of the goods whether as shipper, consignee, holder or endorsee of the bill of lading, receiver or owner of the goods, master of the ship, carrier, shipowner, demise charterer, time charterer, operator, agent, bailee, warehouseman, forwarder, or otherwise howsoever, shall be subject to and governed by the terms of the uniform bill of lading (Warshiplading 7–1–42) adopted by general order No. 16 of the Administrator, War Shipping Administration, July 4, 1942,

which shall be deemed to be incorporated herein, including any amendments thereto or special provisions thereof which may be in effect at the time the goods are received for shipment and applicable to the intended voyage. Copies of such Uniform Bill of Lading and amendments may be obtained on application to the War Shipping Administration, Washington, D. C., or to any of its district offices, or to the Agent or the Master at the Port of Shipment or Port of discharge. The shipment shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the U. S. [46 U.S.C. A. § 1300 et seq.], approved April 16, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of it rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act shall (except as may be otherwise specifically provided in the general bill of lading referred to above) govern before the goods are loaded and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier. Nothing herein contained, whether by expressed statement, reference, implication or otherwise, shall be deemed a surrender of any rights or immunities or an increase of any responsibilities or liabilities which the ship, her owner, charterer, operator, agent or master or any carrier, bailee, warehouseman, or forwarder of the goods or the act of any of them would have in the absence of this bill of lading. None of the terms of this bill of lading shall be deemed to have been waived by any person unless by express waiver signed by such person, or his duly authorized agent."

The theory of plaintiff is that the ocean bill of lading terminated at San Francisco and the railroads then took over; and, although they did not issue a new bill of lading, they are charged under paragraph 11 of the uniform bill of lading adopted by general order No. 16 of the Administrator of the War Shipping Administration dated July 4, 1942, and by the terms of the standard form in use by them; and further under the terms of the Carmack Amendment, supra, appellee as the delivering carrier was liable to the consignee for damages occurring on any connecting carrier between San Francisco and Dallas, whether the damage occurred on the delivering carrier's lines or not.

Defendant's theory is that the shipment was a through shipment from Manila to Dallas on the same bill of lading.

Appellant cites five authorities—Reider v. Thompson, 339 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698; The St. Hubert, D.C., 102 F. 362; Union Pacific R. Co. v. Burke, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656; 13 C.J.S., Carriers, § 405b, page 887; and the Carmack Amendment, 49 U.S.C.A. § 20(11).

Appellee cites Alwine v. Pennsylvania R. Co., 141 Pa.Super. 558, 15 A.2d 507; Reider v. Thompson, supra; A. L. Wolfe & Co. v. Missouri, K. & T. R. Co., Tex.Civ.App., 283 S.W. 250.

Reviewing the authorities and making our own investigation, we are of the opinion that the ocean through bill of lading, in evidence here, controls, rather than paragraph 11 of the uniform bill of lading adopted by G. O. 16 of July 4, 1942.

██ The Carmack Amendment covers only shipments between the States or between a State and an adjacent foreign country. The Philippine Islands is not an adjacent foreign country within the Carmack Amendment.

██ A bill of lading is a receipt given by the carrier for the goods, coupled with an agreement for their carriage, according to the terms expressed in the bill. Hines v. Scott, 112 Tex. 506, 248 S.W. 663. The bill of lading here provides that the shipment was to move to "Port of discharge from Ship, S. F., thence by rail to overland Common Point (in Bond)." Bond and bonded are defined in New Century Dictionary as "Something that binds * * * an obligation; an agreement or engagement; * * * put (goods) in bond, and bonded * * * subject to or secured by bonds; placed in bond, as goods; designed to hold goods in bond, as a warehouse. * * *." The bill of lading above set out is a through bill of lading; see cases cited, 41 Words and Phrases, 609.

The cases cited by appellant are distinguishable. In Reider v. Thompson a new bill of lading was issued at New Orleans entirely independent of the one from Buenos Aires to New Orleans. The St. Hubert case, supra, involved an original bill of lading which contained a provision for transshipment. The rights under such bill are fully set out in 48 Am.Jur. 277, Shipping, sec. 405.

In Union Pacific R. Co. v. Burke, supra [255 U.S. 317, 41 S.Ct. 284], the court stated: "For the purposes of this case, only, it is admitted, and accepted by this court, that this Rule 9A permitted and required that the property should be treated as moving east of San Francisco under the uniform bill of lading, although, in fact, no other than the Yokohama bill of lading was issued. * * *"

The admission for the purposes of such case, as well as the fact that an intermediate carrier on whose line the damage occurred was the party sued, clearly distinguishes such case from the present case.

Appellant's citation to 13 C.J.S., Carriers § 405b, makes the question a close one. However as stated in the text, "* * * where there is a conflict between the written and the printed parts of a contract of shipment or bill of lading, the one indicating a through contract and the other not, the written portion must prevail."

The written portion here designates "point of discharge from ship" in writing as S. F., thence by rail to overland Common Point (in Bond), and acknowledges in writing "Freight paid to S. F. only. Charges from S. F. to destination to be collected from consignee before delivery of goods." Thus securing themselves on the rail freight charges from San Francisco to Dallas, even though they were under contract, in bond, to deliver the goods in Dallas.

This case, in our opinion, is controlled by the holdings in A. L. Wolfe & Co. v. Missouri, K. & T. Ry. Co., Tex.Civ.App., 283 S.W. 250, affirmed A. L. Wolff & Co. v. Missouri, K. & T. Ry. Co., Tex.Com.App., 289 S.W. 1000. See also Smith, Kirkpatrick & Co. v. Colombian S. S. Co., Inc., 5 Cir., 88 F.2d 392.

Since there is no proof in the record here that the damage to the shipment claimed by appellant, occurred on the line of appellee Gulf, Colorado & Santa Fe Railway Company under its common law liability as a connecting carrier, the judgment below is affirmed.

Affirmed.