W. H. HAMILTON et al. v. THE WESTERN NORTH CAROLINA RAILROAD COMPANY.

*Bill of Lading—Contract—Damages.*

1. The bill of lading issued by a common carrier, only determines the conditions upon which the freight is to be transported after it passes under its control, and it does not abrogate or annul any contract made by the common carrier before it was issued in regard to receiving and forwarding the freight.

2. So where the agent of a railroad company agreed to have cars ready to receive freight and to forward it on a certain day, but the carrier failed to have the cars ready and to forward it, such contract is not abrogated by the terms of bill of lading issued when the freight was shipped on a subsequent day.

3. Where the carrier is informed of the special circumstances making it advantageous to the plaintiff to get his produce to a certain market on a certain day, and agrees to furnish cars to be loaded in time to be forwarded to such market by that day, which contract he fails to perform, the plaintiff is entitled to recover such special damages as

actually result from the failure to get the produce to the market on that day.

(*Lindley* v. *The Railroad*, 88 N. C., 547; cited and approved).

CIVIL ACTION, tried before *Graves, Judge*, and a jury, at Spring Term, 1886, of WATAUGA Superior Court.

The present action is prosecuted to obtain redress from the defendant company for an alleged breach of contract on its part, in refusing to receive at its station in Statesville, on Saturday, the 6th day of December, 1884, the day agreed on for the purpose, and thence transport, two car loads of cattle to Richmond, in Virginia, intended to be sold for beef in that market on the Monday following. The cattle were put in cars on the defendant's road on Monday, two days later, and conveyed and delivered in Richmond early on the morning of the next day. Compensation is demanded to cover the loss from diminished weight and impaired quality of the beef, by the needless putting the cattle in and taking them out of the cars on the day of the defendant's failure to transport; for the loss of the best market day in selling; and for the expenses incurred in keeping the cattle at both places.

The defendant denies that any contract was made other than that set out in the bill of lading annexed to the answer, which has been strictly performed, and that the attempt to have the cars loaded with the cattle and attached to the train on Saturday as it passed eastward, failed by reason of the plaintiff's own negligence and delay in loading and having them in readiness for the train of that day, which could not wait for this to be done, without hazarding the connection with the through train at Salisbury.

The bill of lading is in the following form :

"WESTERN NORTH CAROLINA RAILROAD.

"NOTICE!

"Live stock will not be taken at reduced rates given, but will be charged full rates, unless the shipper and agent execute the following contract for the shipment of live stock:

"STATESVILLE STATION, Dec. 8th, 1884.

"Received by the Western North Carolina Railroad Co., of Hamilton & Hardin, the following described live stock:

| Consignee and Destination. | Description Stock. | Weight. |
|---|---|---|
| A. G. Robison, | 1 Carload Cattle, | East. |
| Richmond, Va. | O. K. Load and Cont. | 20,000 |
| | | East Car, 7,102 |

"Consigned as per margin, to be transported by the Western North Carolina Railroad Co. to freight station, Richmond, Va., ready to be delivered to the consignee or his order, to such company or carrier. If the same is to be forwarded beyond said station, whose line may be considered as part of the route to the destination of said stock, it being directly understood that the responsibility of the Western North Carolina Railroad Co. as carrier, shall cease at the aforesaid freight station when delivered or ready to be delivered to such owner, consignee or carrier, upon the following conditions, viz.:

"That whereas the Western North Carolina Railroad Company and connecting lines, transfer live stock only at certain tariff rates, except when in consideration of a reduced rate, the owner or shipper assumes certain risks specified below: Now in consideration of said railroad's agreeing to ship the above described live stock at the usual reduced rate of $45.00 per car load to Richmond, Va., and a free passage to the owner or his agent on the train with the stock, (if shipped in car load quantities,) the said owner and shipper does hereby assume and release the said railroads from all injury, loss or

damage or depreciation which the animal or animals or either of them, may suffer in consequence of either of them being weak, or escaping, or injuring itself, or themselves, or each other, or in consequence of overloading, heat, suffocation, fright, violence, and from all other damages incidental to railroad transportation, which shall not have been caused by fraud or gross negligence of said railroad companies. And it is further agreed, that the said owner and shipper is to load, transfer, and unload said stock, with the assistance of the companies' agents or agent, at his own risk; and it is further agreed, that while the companies' employés shall provide the owner or person in charge of the stock all proper facilities on train and at stations for taking care of the same, the business of the company shall not be delayed by the detention of trains to unload and reload stock for any cause whatever, but cars may be left at a station upon request of the person in charge of the same, to be forwarded by next freight train, if he so directs; and the said owner and shipper hereby agrees that said railroad company shall not be held liable for any damage or injury that may occur to said stock, during the time the same may remain unloaded, and cut off the cars as aforesaid, and in case said stock is kept over at any given point by the said owner or shipper or his agent, beyond a reasonable length of time for feeding and watering, subject always to local laws of any State through which it may pass while in transit, when this contract shall be held to be voidable at the option of these railroad companies or either of them, in which case such rates of freight may be imposed and collected by said companies as they or either of them may deem proper, not to exceed local rates to such points of detention.

It is further agreed and understood, that the presentation of this bill of lading shall be sufficient evidence of ownership to relieve and release these companies from all liability on account of every delivery, but shall not be held to ope-

rate against the rights of these companies to demand, if they elect, the identification of the party presenting the bill of lading, before the delivery of the said stock to him. And it is further agreed, that in case of accident to, or delay of train, from any cause whatsoever, the owner and shipper is to feed, water, and take proper care of stock at his own expense, or the company may do so at the expense of the owner. And it is further agreed, that the owner and shipper, or his agent or agents in charge of stock, shall ride upon the freight train on which the stock is transported, and that he does assume and release said railroad companies from all risk of personal injury while about or upon the trains of the companies. And it is further agreed, that should damage occur for which the company may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed for a stallion or jack $200, for a horse or mule $100, cattle $20, other animals $15 each. And it is further agreed, that when stock is shipped in less quantities than a car load, the company's agent shall assess freight on the animal or animals at the following tariffs, and collect freight accordingly, regardless of what the actual freight may be, viz.: Horses, mules and horned animals, estimated at 1,000 pounds each, and value limited at $100 each; jacks, stallions and bulls estimated at 2,000 pounds each; hogs and calves may be estimated at 230 pounds each; hogs and calves in lots of five or more, estimated at 200 pounds each; sheep and lambs may be estimated at 115 pounds each; sheep and lambs in lots of five or more estimated at 100 pounds each.

And this agreement further witnesseth, that said owner and shipper has this day delivered to said company the live stock described above, to be transported on the conditions, stipulations and understandings above expressed, which have

been explained to, and are fully understood by, the owner and shipper.                                           J. S. SCALES.

*Name of person in charge:*          HAMILTON & HARDIN,
    J. C. HARDIN.                      *Owners and Shippers.*

"*Instructions to Agents and Conductors.*—Agents will endorse on this contract, and copy name of person or persons, in charge of stock.  When so entered, conductors of train carrying the stock, will recognize and pass the parties, but will not be recognized on any other train.  The original contract, duly signed by shipper, must be given to the shipper of the stock, and a duplicate, signed and marked duplicate, sent to the General Claim Agent."

The following issues were submitted to the jury :

Did the defendant contract with the plaintiffs as alleged in the complaint?  Answer—Yes.

2d.  Did the defendant have knowledge of the object of the plaintiffs to have the cattle in Richmond, Va., on a particular day, as set out in the complaint?  Answer—Yes.

3d.  Did the defendant fail to comply with the contract as alleged?  Answer—Yes.

4th.  What damages, if any, have the plaintiffs sustained by reason of the failure of their agents to comply with the contract?  Answer—Two hundred and fifty dollars.

5th.  After the contract made between the parties as alleged in the complaint, could the defendant have shipped the cattle beyond the North Carolina line before Monday morning ?  Answer—Yes.

There was a judgment for the plaintiffs, and the defendant appealed.

*Mr. E. C. Smith*, for the plaintiffs.
*Mr. C. M. Busbee*, for the defendant.

SMITH, C. J., (after stating the facts).  At the trial before the jury, the plaintiffs proposed, and after objection made

and overruled, were allowed to prove by the witness Hardin, that at the plaintiffs' instance he saw and applied to one Scales, an agent of the defendant at Statesville, for two cars to convey cattle to Richmond, as he wished to be present at the sales there on Monday, and was answered: "You know the rules of loading, and must be on time." That by daylight on Saturday morning, the next day after the interview, the cattle were at the chute or place of loading, but none of the company's servants were at the depot except the night-watchman; that with such assistance as he could get, the cars were pushed up, one car filled and the other nearly loaded when the train came; that the work of loading was hurried up, and the cattle all put in, when the train moved, and without any attempt to attach the two cars, proceeded on its way and left them; that the cattle were then taken from the cars and left over till Monday, when they were again put on the cars and carried to Richmond, reaching their destination early the next day.

The plaintiff Hardin testified to the same effect as to getting the cattle on the cars, moving them to the chute for that purpose, and, just as the loading was finished and the cars ready, the starting of the train without them. Both witnesses testified to the damages from the needless putting the stock in and taking them out of the cars, estimating the damages at from fifty cents to one dollar on each of the forty-nine animals sent.

The other damages claimed, were for expenses incurred by the delays at Statesville and Richmond before the next sale day (Friday) after their arrival

The testimony of the agent Scales, a witness for the defendant, is, that he made no contract for the transportation of the cattle, except that contained in the bill of lading, and this was with the plaintiff Hardin; that the witness Bledsoe came to his office on Friday, and asked for two stock cars, and witness said he had them; that Bledsoe remarked, "I will

have two car loads of stock to arrive this evening," not saying when or where he wanted them sent. That on the same day one car was pushed up to the chute and another near to it; that on Saturday morning, plaintiff Hardin came to witness and asked why his cattle were not sent. Witness inquired if his stock were loaded, and the reply was, "not quite," and witness then said "we never hold trains." That this was between 7 and 8 o'clock, and that the train from the west is due at 7 a. m., and usually waits three minutes, but this morning was delayed ten minutes. The engineer in charge of the train stated, that when he started, there were a dozen cattle still to be put in the car at the chute, one hundred yards off over the track; but if loaded, he could have attached the cars to the train in fifteen or twenty minutes, and if delayed twenty minutes, would have missed connection with the Richmond and Danville train at Salisbury.

The conductor testified, that the last of the cattle were being put in the car when the train pulled out, and that the latest moment the train could leave and not lose connection, would be 7:30. This is the substance of the evidence bearing upon the material matters in controversy, which are whether any contract was entered into before Monday, and if so, upon whom rests the blame for the omissson to convey the stock on the train of Saturday?

I. The facts in proof are, in our opinion, sufficient to warrant the finding that the defendant company did undertake to furnish the cars and transport the cattle on the Saturday following, which, if carried out in detail, would have been at the usual charge, if the reduced rate was accepted, put in the form of the bill of lading afterwards issued. But it was not less an agreement, though arrested in its incipiency, by the defendant's failure, if it can be properly attributed to it, to carry it out at the time fixed upon. The undertaking to have the cars in readiness for the stock, imposed an obligation to take the initiatory steps towards transportation,

which was broken by its omission or neglect. The duty of putting the cattle in the cars, devolved upon the plaintiffs; that of preparing and having them ready, on the company. If this were not so, no contract whatever would ever be formed until the issue of the bill of lading, while this only determines the conditions of the transportation after the cars pass under the control of the company or its agents. This instrument regulates the terms of the second or executed contract, of which no complaint is made, but the antecedent one, broken by the neglect to forward on the Saturday before, is not merged in the latter, and its consequences averted. Indeed, the written instrument is but the execution of a preliminary agreement resting in parol, and its consummation.

II. Was there such default on the defendant's part as to expose it to a claim for damages?

From the defendant's own agent. it appears that he was expecting the stock to arrive on Friday evening, and the cattle were there early the next morning, and no preparations seem to have been made by the company's agents to have the cars in readiness to receive them in time for the early train. They were, however, about loaded, (some testimony affirming that both cars were loaded,) when the train moved off. There was twenty minutes' time to spare then before it was necessary to leave to insure connection at Salisbury. How long it would be necessary to wait to connect the cars with the train and prepare the necessary papers, does not appear, and at least during this interval, no effort was made to accomplish the result. It was early in the morning, and the plaintiffs were early at their work. They appear to have been in no default, and it would seem that equal promptness on the part of the company's employees would have insured the transportation. At least the jury might reasonably infer so from the facts detailed, and thus

place the blame of miscarriage of the arrangement upon the defendant, and its servants.

This disposes of the alleged error in regard to the refusal of instructions requested upon the question of the existence and validity of the contract, and those only remain to be considered which relate to the measure of damages.

The controversy upon this inquiry, is confined to such as are claimed to result from the defendant's failure to have the cattle in Richmond on Monday, in time for the sales of that day, and a consequent loss of a favorable market. The extent of the loss is not shown in the evidence, and we must assume, if any damages were added on this account, they were in accordance with the proofs, and thus is drawn in question the charge of the Court as to the consideration and allowance of the claim for any.

Upon this point the instruction given is in these words: "If you find that Monday was a sale day, and the best sale day, when plaintiffs' beef-cattle could have been sold to the best advantage, and the plaintiffs wished their cattle to be in Richmond on that day, and this was *known to defendant, and was in view of both parties when the contract was made,* the plaintiffs would be entitled to have such special damages as actually result to them from these special circumstances."

This is in response to the defendant's prayer for an instruction, which proposed to limit the recovery to the difference in value of the cattle, (that is, in deterioration and change in the market, as we understand,) when they ought to have arrived according to the contract, and did arrive, whereof no proof had been given; and, secondly, that special damages for loss of a bargain are not recoverable, unless the carrier knew all the circumstances, and agreed to deliver at a day certain, and knew that Monday was sale day in Richmond.

The finding on the second issue, seems to cover the point, and brings home to the defendant's agent a knowledge of

the fact, and while the issue is in terms very general, no objection to its form was made as not presenting it to the jury.

The manner in which the jury were charged in regard to such additional damage, is in accord with the ruling in *Lindley* v. *R. & D. R. R. Co.*, 88 N. C., 547 ; and furnishes no cause of complaint to the appellant.

No error. Affirmed.