McABSHER & HULCHER v. THE RICHMOND AND DANVILLE RAILROAD COMPANY.

*Contract—Merger—Common Carrier—Sunday Laws—Issues.*

1. It is erroneous to submit an issue to the jury which is not raised by the pleadings.

2. Where the law of the place of the performance of a contract for the sale and delivery of goods prohibits such transactions on Sunday, the Courts will not recognize any market price alleged to be prevalent on that day.

3. The plaintiffs made an oral contract with a common carrier by which the latter agreed to furnish cars for the transportation of plaintiffs' property on a day certain but failed to do so; a short time thereafter the carrier did ship the goods, for which it gave a bill of lading : *Held*, that the prior oral contract was not merged in the latter, and the plaintiffs could maintain an action for damages for a breach thereof. *Hamilton* v. *Railroad*, 96 N. C., 398, approved.

This is a CIVIL ACTION, and was tried at Spring Term, 1890, of ASHE Superior Court, *Bynum, J.*, presiding.

The facts upon which the opinion is based are stated therein.

*Messrs. G. N. Folk* and *G. W. Bowers*, for plaintiffs.
*Messrs. D. Schenck* and *F. H. Busbee*, for defendant.

SHEPHERD, J.:

1. The plaintiffs allege that defendant contracted to furnish them two cattle cars at Taylorsville on a certain Thursday, in order that they might ship their cattle on the eastbound train of that day. They also allege, for the purpose of showing special damages, that their object in contracting for the cars at the time stated was to reach the city of Norfolk, Virginia, with their cattle on the following Saturday morning, so as to avail themselves of the Sunday market, that being "the best market day" in the said city. They further allege that their said purpose was known to the defendant, and they seek to recover damages for the breach of the said contract.

The defendant, among other defences, denied these allegations, and issues one and two, involving their truthfulness, were properly framed and submitted to the jury. The Court also submitted the third issue, which was as follows: "Did it (the defendant) agree to carry the cattle there in time for said market?" To this issue the defendant excepted, and we think that the exception should be sustained. There is no allegation that the defendant contracted to transport the cattle to Norfolk at any particular time, and the mere knowledge on its part of the plaintiff's object and purpose to reach that place on Saturday, does not dispense with the necessity of alleging that there was an agreement to that effect. There must be *allegata* as well as *probata*. The defendant may well have been prejudiced by the said issue, as it does not appear that his Honor, in his charge, distinguished the damages to be recovered for a violation of this interpolated contract from those which might be recovered upon the contract upon which the first issue was founded.

2. The defendant further contends that the plaintiffs cannot recover, because their purpose was illegal in that the sale of cattle in public market on Sunday was prohibited by the law of Virginia. As the Court could not take judicial

notice of such a law, and as its proof was accompanied by evidence tending to show that the alleged transactions on Sunday were not, according to the custom of the place, completed sales—the payment and delivery being made on Monday, and therefore not a violation of the Sunday law of the said State (1 Whart. Con., 383; 2 Pars. Con., 763; Benjamin on Sales, 732)—we do not feel warranted in passing upon the vitiating effect of the said law upon the contract of carriage had it been clearly shown that the purpose of the plaintiffs was to effect a completed sale on the Lord's day.

Granting, however, that there was a legal contract, that is, one free from any illegal purpose in its inception, to transport to Norfolk, as alleged, we are entirely satisfied that the defendant's third prayer of instruction should have been given.

The prayer was as follows:

"That the plaintiff cannot show any sale day, or any market price in Norfolk on Sunday, because all work and labor is forbidden by the laws of Virginia, nor can he recover any damages by reason of the difference between such Sunday market price and the market price of another day."

The Code of Virginia, chap. 192, § 17, prohibits such sales on Sunday, and, this being so, it plainly follows that there can be no "market price" on that day which can be recognized in a court of justice. It is true that the plaintiffs explained the nature of the agreements that were made on Sunday, but it was for the jury to determine whether this explanation was true, and, in view of the uncertainty in which the matter was involved, we think the prayer should have been given with the modification that, if the transactions were of the character as stated by the plaintiffs, such damages might be considered.

There were other exceptions; but, as we think for the foregoing reasons, that a new trial should be granted, it is unnecessary to pass upon them all in this appeal.

3. We think it best, however, to express our opinion upon the point so earnestly and ably pressed upon us, to-wit, that the shipping of the cattle by the plaintiffs at a later day and the taking of a bill of lading had the effect of merging into this latter contract the prior oral one which is sued upon. This point is distinctly decided in *Hamilton* v. *Railroad*, 96 N. C., 398, and we are asked to overrule that decision.

We have examined with great care the cases cited by the defendants, but they fail, in our opinion, to shake in the slightest degree the authority of the case mentioned, and they clearly have no application to the present suit. It is familiar learning that where parties have put their contracts in writing, in the absence of fraud or mistake, oral testimony shall not be heard to contradict, add to or vary their terms; and that this Court is fully impressed with the importance of maintaining this salutary rule of evidence, will be seen from the case of *Moffitt* v. *Maness*, 102 N. C., 457, and other decisions. But we are at a loss to understand how that principle is violated by the ruling of his Honor in this case. It is not denied that a common carrier may enter into an oral contract concerning the carriage of freight, and the plaintiffs insist that such a contract was entered into betweem them and the defendant. What contract? Very plainly not the actual contract of shipment, which was evidenced by the bill of lading, for that contract was duly performed. But it is the contract sued upon, which was a distinct, or, as Chief Justice Smith says in Hamilton's case, an " antecedent" one, to-wit, not as to the terms of the proposed shipment, but that the defendant would have the cars ready to transport the cattle of the plaintiff on a certain day. The cars were not ready on that day, and there was therefore a breach of the said agreement. In consequence of this breach of agreement, there was in fact no shipment or contract of shipment on said day, and it is because there was no such shipment or contract of shipment at the time mentioned (which was

the result of the defendant's failure to perform its contract to be ready to transport), that the plaintiffs claim to have been endamaged.

Here, then, we have a special contract to provide transportation on a certain day. It is broken, and damage ensues. Can it be that because the plaintiffs afterwards entered into an actual contract of shipment, which was duly performed, that their right to recover damages for the breach of a prior special contract is " merged" into the second, and thus entirely defeated?

Suppose that A contracts with B, a liveryman, by which B is to furnish him a conveyance on a .certain day to a certain place, and A is ready at the time and place to perform the contract, but B refuses or fails to comply, and by reason of such refusal or failure A is endamaged — can it with reason be contended, because A still wishes to go to the place, and makes a contract with B on another day, under which contract B actually conveys him there, that this amounts to a waiver of damages for the breach of the prior contract? The mere statement of the proposition, without argument, would seem to furnish a negative answer, and yet such is the very case presented by this record.

The numerous authorities cited by the defendant establish the proposition that the terms of a contract evidenced by a bill of lading, duly assented to, cannot be varied by oral testimony, and that all preliminary "chaffering" ·about it is merged in the writing. This is the correct principle, though we find several cases cited in the notes to some of the defendant's authorities which seem to impinge upon the rule as above stated.

It will be noted, upon a careful perusal of the cases referred to by the defendant, that they relate to the *terms* of the contract. Take, for instance, the case of *Hopkins* v. *Railroad,* 16 A. & E. R. C., 126, where the plaintiff proposed to show that the defendant had agreed to allow him rebates, but he

subsequently accepted a bill of lading which contained no such stipulation. It was properly held that this testimony was adding to a complete contract and could not be admitted.

In *Snow* v. *Indiana Railroad Co.*, 28 Am. & E. R. C., 77, the same principle was applied, and so it will appear in "Lawson on Contracts of Carriers," and all of the other authorities cited, that the Courts were but applying the ordinary rule of evidence as to the terms of a contract which had been reduced to writing. The only terms of the contract in the present case were that the defendant was to be ready to transport on Thursday, and to enter into and perform a contract of shipment on that day. They violated this special oral contract, and we cannot see what it had to do with the *terms* of an actual contract of shipment made on a subsequent day, and which has been duly performed.

We think that the Judge's ruling was correct in this particular, but, for the reasons first mentioned, we are of the opinion that there should be a new trial.

Error.